# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **ARCTURUS INTERNATIONAL LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DARLENE GELLER-STOFF**<br><br>**Defendant.** | **Case No. _____** |

## COMPLAINT

Plaintiff Arcturus International LLC files this Complaint against Darlene Geller-Stoff and shows the Court the following.

## INTRODUCTION AND SUMMARY

### 1.

Defendant Darlene Geller-Stoff, a highly educated and accomplished expert in corporate ethics and compliance, has wrongfully converted over $1.5 million in funds entrusted in her by Plaintiff Arcturus International LLC. In addition, Geller-Stoff has wrongfully converted a valuable home in Roswell, Georgia, that she paid

nothing for, breaching an agreement with Arcturus to reconvey the home to Arcturus upon demand.  Rather than provide an honest account of the money entrusted in her, Geller-Stoff has pocketed the money and taken the real property as her own, making the delusional claim that she is the victim of a vast conspiracy. Geller-Stoff's actions give rise to claims of breach of contract, money had and received, conversion, breach of fiduciary duty, specific performance, and unjust enrichment.

2.

Geller-Stoff also is liable to Arcturus for punitive damages.   Geller-Stoff knows that her actions violate the rights of Arcturus, and she has no viable defense. The wantonness of her actions is further displayed by her disregard of her public duty to tell the truth in filings with the Internal Revenue Service and to pay the taxes owed.  Geller-Stoff has filed tax returns with the IRS claiming as deductions over $100,000 in expenses for which she was reimbursed by Arcturus.  She has cheated Arcturus and, by cheating the IRS, her fellow citizens.  Geller-Stoff has intentionally disregarded the rights of others and an award of punitive damages is necessary to deter Geller-Stoff from continuing her outrageous conduct.

3.

Geller-Stoff also is liable to Arcturus for attorney's fees.  Geller-Stoff has no viable defense to these claims; she has admitted in numerous writings that the funds and property belong to Arcturus, yet she has stubbornly refused to return or account for them.  Geller-Stoff has acted in bad faith, has been stubbornly litigious, and has caused Arcturus unnecessary trouble and expense.  Arcturus is entitled to an award of reasonable litigation expenses, including attorney's fees.

## PARTIES, JURISDICTION AND VENUE

4.

Plaintiff Arcturus International LLC ("Arcturus") is a Delaware limited liability company with its principal place of business in Nevada.  Arcturus is a single-member limited liability company, and its sole member is a citizen of the State of Nevada.

5.

Defendant Darlene Geller-Stoff ("Geller-Stoff") is a citizen of the State of Georgia.

6.

This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

7.

This Court has personal jurisdiction over Geller-Stoff and venue in this District is proper because the Defendant works and resides in this District (and in the Atlanta Division) and real property that is involved in this case is located in Fulton County.

8.

Geller-Stoff may be served with process at 182 Plantation Trace, Woodstock, Georgia, 30188.

## **FACTS**

### **Darlene Geller-Stoff and David Weisman**

9.

Geller-Stoff is the owner of Direct Communications Specialists, LLC, a consultancy that provides businesses with expert advice and expert witness

testimony on a wide range of regulatory, corporate governance, best business practices, and customer service issues.

10.

Arcturus is in the business of real estate development and film production. Arcturus' acting Secretary and authorized agent is David Weisman.  Weisman is a respected former CEO of several publicly traded companies, as well as a real estate developer and investor.

11.

Mr. Weisman has known Ms. Geller-Stoff since 2013 and the two have had a number of personal and professional dealings.

12.

By 2016, Geller-Stoff and Weisman had engaged in a number of different business transactions and investments.  For example, in late 2015, Geller-Stoff and Weisman worked closely together towards establishing a high-end wine distribution business and were raising capital to purchase a large inventory of fine wines.

## The Arcturus Fund

### 13.

In 2016, Geller-Stoff and Weisman, on behalf of Arcturus, agreed to create a company, which would be called Anderlex Holdings LLC ("Anderlex"), to hold cash and other assets for the purpose of investment for the benefit of Arcturus and for Geller-Stoff, if and to the extent that Geller-Stoff needed reimbursements for any expenses that she incurred on Arcturus' behalf.  Geller-Stoff became the 90% owner of Anderlex; the other 10% was owned by Pierce Kirby, a business colleague of Weisman.

### 14.

In 2016, Arcturus funded Anderlex with three substantial deposits.

### 15.

On April 8, 2016, Arcturus delivered to Anderlex a cashier's check in the amount of $250,000.  This $250,000 deposit is shown on page 3 of Anderlex's Bank of America statement for April, 2016, a true and correct copy of which is attached hereto as Exhibit A.

16.

On May 25, 2016, Arcturus caused Dan Rizzo, attorney at law, to wire $889,490 on Arcturus' behalf to Anderlex.  This $889,490 deposit is shown on page 3 of Anderlex's Bank of America statement for May, 2016, a true and correct copy of which is attached hereto as Exhibit B.

17.

On December 16, 2016, Arcturus caused Trade Capital LLC to wire $352,500 on Arcturus' behalf to Anderlex.  The $352,500 deposit is shown on page 3 of Anderlex's Bank of America statement for December, 2016, a true and correct copy of which is attached hereto as Exhibit C.

18.

These three deposits totaling $1,491,990, plus interest and investment income and appreciation, will be referred to as "the Arcturus Fund."

19.

Geller-Stoff, with Arcturus' knowledge, then caused Anderlex, in a series of transactions also in 2016, to transfer the Arcturus Fund from Anderlex's Bank of America checking account to a Merrill Lynch brokerage account.

20.

Consistent with the parties' intent that Geller-Stoff was holding the Arcturus Fund for the benefit of Arcturus, Geller-Stoff gave Weisman the online banking credentials and passcodes enabling Weisman to make stock trades and other transactions with the Arcturus Fund in Anderlex's Merrill Lynch account. As shown in Anderlex's Merrill Lynch 2016 year-end statement, a true and correct copy of the first page of which is attached hereto as Exhibit D, Weisman succeeded in generating a trading gain of over $147,000 in the account for the year.

21.

In the summer of 2017, Geller-Stoff and Arcturus agreed that Anderlex should be shut down and Anderlex's stock and cash that was held by Merrill Lynch be transferred to a personal brokerage account that Geller-Stoff would open at SunTrust, where she already maintained multiple other accounts.

22.

In a July 31, 2017 email to Weisman, Geller-Stoff confirmed that she would "establish the online trading account at SunTrust this week and you will need to let me know when you want to do the stock transfer," referring to the transfer of the Arcturus Fund from Anderlex's Merrill Lynch account.  Geller-Stoff continued: "I

will only keep your stock in that account."  A true and correct copy of this July 31,

2017 email is attached hereto as Exhibit E.

23.

In the same July 31, 2017 email, Geller-Stoff stated: "In the meantime, I will

complete the paperwork to move my stocks back into my portfolio," referring to

her separate brokerage account at Sun Trust.   To ensure their efforts in transferring

the stock from Anderlex's Merrill Lynch account were coordinated, Geller-Stoff

added: "I won't execute on anything regarding any stocks until you confirm you're

ready to do so."

24.

On August 14, 2017, Geller-Stoff caused Anderlex to transfer all of its

Bausch Health Cos. Inc. stock (stock symbol "VRX") and all of its Bank of

America Corp. stock (stock symbol "BAC") to her personal account at SunTrust,

account number NC1669414.  A true and correct copy of the Transfer of Assets

form documenting this transfer is attached hereto as Exhibit F.

25.

Also on August 14, 2017, Geller-Stoff caused Anderlex to transfer all of its

Amazon.com Inc. stock (stock symbol "AMZN"), all of its General Electric Co.

stock (stock symbol "GE"), and all of its Seagate Technology Holdings, PLC stock

(stock symbol "STX) to her personal account at SunTrust, account number

AX6068100.    A true and correct copy of the Transfer of Assets form

documenting this transfer is attached hereto as Exhibit G.

26.

At the time of these transfers in August 2017, it was the intent of Arcturus

and Geller-Stoff to segregate the small amount of funds (in the form of securities

and cash) belonging to Geller-Stoff deposited into account number NC1669414

from the Arcturus Fund (which was also in the form of securities and cash), which

was deposited into account number AX6068100.

27.

Geller-Stoff and Arcturus agreed that the Arcturus Fund would be held by

Geller-Stoff for the benefit of Arcturus, that Geller-Stoff would use the funds for

Arcturus' benefit, and that Geller-Stoff would account for the use of the funds in

periodic communications to Weisman ("the Arcturus Fund Agreement").

28.

Geller-Stoff personally benefitted from the Arcturus Fund Agreement

because it allowed her to maintain much larger personal account balances, which

gave her additional status and lower cost of capital with her bank; she personally shared in the profits generated from certain stock trades; she enjoyed first class international travel at Arcturus' expense; and she received large amounts of cash to pay for, among other things, her daughter to attend Cambridge University in the United Kingdom.

29.

Since the establishment of the Arcturus Fund, Geller-Stoff and Weisman worked closely together on several projects, including the potential purchase of a call center, a financial services company, a blockchain digital transaction suite, an e-commerce platform, and several other potential ventures.

30.

Geller-Stoff would typically pay for various expenses related to these business opportunities either directly out of the Arcturus Fund or pay for them out of her own funds and reimburse herself from the Arcturus Fund.  For example, attached hereto as Exhibit H is a true and correct copy of September 5, 2017 emails from Geller-Stoff to Weisman (email address "Dax…").  In the email, Geller-Stoff addresses the closing down of Anderlex, LLC (discussed above), and then states: "On a separate note, I paid Mike today for the website work for GPN.  I wrote the

check from my business account - $3,815.78."   On December 5, 2017, Geller-Stoff reimbursed herself $3,815.78 from the Arcturus Fund, as shown in the Transaction Summary, discussed below.

31.

To account for the expenditures that she made on behalf of Arcturus, and for which she was reimbursed out of the Arcturus Fund, Geller-Stoff maintained a document entitled "Transaction Summary" which she shared with Weisman from time-to-time.

32.

Attached hereto as Exhibit I is a true and correct copy of a document entitled "Transaction Summary Document 2017-2020 (updated 6/20/2020" (the "Transaction Summary").  Geller-Stoff wrote the Transaction Summary.

33.

The Transaction Summary contains information in five columns.  The first column contains the date of the expenditure that Geller-Stoff made on behalf of Arcturus.  The second column gives the description of the expenditure, such as the identity of the payee.  For example, on the first page of the Transaction Summary, Geller-Stoff references the "GPN" reimbursement referenced above.  The third

column states the amount of the expenditure.  The fourth column states whether or how Geller-Stoff was reimbursed for the expenditure.  Most entries in the fourth column say "reimbursed," but others provide more detail on how Geller-Stoff was reimbursed (e.g., in March 2018 on page 2, "moved to Deep Purple," referring to an investment that Arcturus funded on Geller-Stoff's behalf in consideration for her payment to Troutman Sanders).  The fifth column shows the date of the reimbursement.

34.

The Transaction Summary shows Geller-Stoff accounting for the use of the Arcturus Fund, not for her own benefit, but for the benefit of Arcturus.  The Arcturus Fund belonged, and belongs, to Arcturus, not to Geller-Stoff.

**The Mt. Laurel Agreement**

35.

In 2013, Arcturus purchased a residence at 11825 Mt. Laurel Drive, Roswell, Georgia ("the Mt. Laurel Property"), where Weisman would reside until November 2021.

36.

To raise cash to settle unrelated litigation, Arcturus in May 2018 agreed to sell Mt. Laurel to Geller-Stoff pursuant to an agreement ("the Mt. Laurel Agreement") that is confirmed by a number of written communications and payments.

37.

 Under the terms of the Mt. Laurel Agreement, Geller-Stoff agreed to pay $675,000 for the Mt. Laurel Property with a $500,000 mortgage and $175,000 cash.  Weisman, however, would continue residing in the Mt. Laurel Property and Arcturus would reimburse Geller-Stoff for the $175,000 cash payment and for all monthly expenses relating to the Mt. Laurel Property, including the payment on the mortgage, property taxes, expenses, etc.  Consistent with the parties' prior agreement relating to the Arcturus Fund, Geller-Stoff would be reimbursed (or actually, would reimburse herself because she had control of the Arcturus Fund) for any expenses associated with the Mt. Laurel Property.   The parties also agreed that Arcturus, upon demand, could repurchase the Mt. Laurel Property from Geller-Stoff by paying the principal amount then owing under the mortgage.

38.

The key feature of the Mt. Laurel Agreement is that although Geller-Stoff would hold legal title to the Mt. Laurel Property, and was the obligor under the mortgage, she would not have to make any payments for the Mt. Laurel Property out of her own personal funds or, if she did so, she would be 100% reimbursed from the Arcturus Fund.

39.

The parties performed under the Mt. Laurel Agreement.   At the May 31, 2018 closing, Geller-Stoff paid $500,000 via her mortgage lender and $167,230.35 in cash (reduced from $175,000 at closing as the result of various credits and adjustments).   Immediately after closing Arcturus reimbursed Geller-Stoff for her $167,230.35 payment.

40.

Pursuant to the Agreement, Geller-Stoff regularly sought reimbursement from Arcturus for all expenses that she incurred relating to the Mt. Laurel Property, including mortgage payments, maintenance, repairs, utilities, property tax, etc.

41.

Arcturus paid every invoice that Geller-Stoff submitted over the next two and a half years.  Arcturus reimbursed Geller-Stoff approximately $100,595 for mortgage payments and another approximately $45,977.20 for other expenses (including property taxes and municipal assessments).

42.

Geller-Stoff recorded and acknowledged Arcturus' reimbursement of Geller-Stoff for all the expenses she incurred with respect to the Mt. Laurel Property in the Transaction Summary, Exhibit I, discussed above.  For example, the Transaction Summary shows at the bottom of page 2 that Geller-Stoff was on May 18, 2018 "reimbursed" in the amount of $167,230.35 for her expenditure in May 2018 on "House."  Then, every month following the purchase of the Mt. Laurel Property, the Transaction Summary shows a monthly reimbursement of $2,453.54 for "Mountain Laurel Mortgage."

43.

During the course of the parties' performance under the Mt. Laurel Agreement, Geller-Stoff also repeatedly acknowledged its terms and Arcturus' compliance therewith.

44.

Attached hereto as Exhibit J is a true and correct copy of an email dated July 29, 2020 ("the July 29, 2020 Email").

45.

In the July 29, 2020 Email, Geller-Stoff states: "it was never our arrangement for me to use my personal funds to pay the mortgage, taxes or other expenses related to Mountain Laurel."

46.

In the July 29, 2020 Email, Geller-Stoff asks to be reimbursed an additional $8,345.13 "for the remaining Mountain Laurel expenses I've incurred to date," which "will bring outstanding expenses for Mountain Laurel to zero."  In the same email, Geller-Stoff then lists estimates of "upcoming expenses for Mountain Laurel for the remainder of 2020" for which she anticipated billing Arcturus monthly, stating: "Of course, I will balance out monthly utilities/expenses to reflect actual charges as the bills come in as I always have."

## **Geller Stoff Breaches the Arcturus Fund and Mt. Laurel Agreements**

47.

In late 2019 and early 2020, however, the personal relationship between Mr. Weisman and Ms. Geller-Stoff ended over a particularly bitter dispute between Geller-Stoff and Weisman's adult daughter.  By late 2020, Geller-Stoff began taking actions directly contrary to the parties' agreements relating to the Arcturus Fund and the Mt. Laurel Property.

48.

In November 2020 Geller-Stoff served eviction notices on Weisman and several other persons not residing in the Mountain Laurel residence including Weisman's estranged wife, his ex-wife, both of his children, and his daughter's boyfriend.

49.

On February 11, 2021, Geller-Stoff filed a Dispossessory Petition in the Magistrate Court of Fulton County seeking to evict Weisman from the Mt. Laurel Property.  A true and correct copy of the Dispossessory Petition is attached hereto as Exhibit K.

50.

In response to the filing of the Dispossessory, Weisman, on behalf of
Arcturus, demanded that Geller-Stoff reconvey the Mt. Laurel Property to Arcturus
in exchange for Arcturus' agreement to pay off the mortgage on the Mt. Laurel
Property.  Geller-Stoff refused.

51.

Using the fact that she had legal title to the Mt. Laurel Property, Geller-Stoff
insisted on pursuing the Dispossessory.  Geller-Stoff took these actions even
though she had never paid anything for the Mt. Laurel Property: Arcturus
reimbursed her for her $167,230.35 down payment and reimbursed her for every
monthly mortgage payment and every other expense associated with the ownership
of the Mt. Laurel Property.

52.

Given the cost of litigating the Dispossessory, the ongoing personal and
professional damages associated with the uncertainty over whether Weisman could
remain in possession of Mt. Laurel given Geller-Stoff refusal to reconvey the Mt.
Laurel Property to Arcturus pursuant to the Mt. Laurel Agreement, and the
potential jurisdictional limitations of the Magistrate's Court, Arcturus and

Weisman agreed to vacate the Property by November 10, 2021.  The parties to the Dispossessory consented to the entry of an Order dated September 23, 2021, stating that Arcturus and Weisman would vacate the Property by November 10, 2021 and that the counterclaims of Weisman and Arcturus were dismissed without prejudice.  A true and correct copy of said Consent Order is attached hereto as Exhibit L.

## **Conversion of the Arcturus Fund**

53.

In addition to wrongfully obtaining possession of the Mt. Laurel Property as her own, Geller-Stoff has now converted the Arcturus Fund for her own use.

54.

On November 4, 2021, Arcturus made a formal written demand to Geller-Stoff to return the balance of the Arcturus Fund to Arcturus and to provide an accurate accounting of what she has done with Arcturus' cash and securities.

55.

On November 5, 2021, Geller-Stoff's counsel responded to Arcturus' November 4, 2021 demand, informing counsel for Arcturus that Geller-Stoff would not return the money or provide an accounting.  In the November 5, 2021

letter, Geller-Stoff's counsel claims that Geller-Stoff – having absconded with real estate, cash, and securities belonging to Arcturus – has been the victim of a vast conspiracy masterminded by Weisman.

56.

All conditions precedent to the filing of this lawsuit have been satisfied.

<strong><u>Count One – Breach of Arcturus Fund Agreement</u></strong>

57.

The foregoing allegations are incorporated herein by reference.

58.

Pursuant to the Arcturus Fund Agreement, Geller-Stoff agreed to hold the Arcturus Fund for the benefit of Arcturus, to keep account of the funds that she was holding for Arcturus, and to deliver to Arcturus the balance of the Arcturus Funds upon demand.

59.

Geller-Stoff has breached the Arcturus Fund Agreement by not holding the Arcturus Fund for the benefit of Arcturus, by not keeping account of the funds that she was holding for Arcturus, and by not delivering to Arcturus the balance of the Arcturus Funds upon demand.

60.

As a proximate cause of Geller-Stoff's breach of the Arcturus Fund

Agreement, Arcturus has been damaged in an amount to be determined at trial.

## Count Two – Money Had and Received

61.

The foregoing allegations are incorporated herein by reference.

62.

Geller-Stoff is holding money of Arcturus which she ought in equity and

good conscience to refund to Arcturus.

63.

Geller-Stoff is holding the Arcturus Fund, which is comprised of the money

and securities Geller-Stoff received from Anderlex in 2017 that was not her own

money.

64.

By not returning the Arcturus Fund to Arcturus, Geller-Stoff is unjustly

enriching herself at the expense of Arcturus.

65.

Arcturus is the rightful owner of the Arcturus Funds.

66.

Demand for repayment has been made to Geller-Stoff and the demand has been refused.

67.

Arcturus is entitled to judgment for money had and received in an amount to be determined by the finder of fact at trial.

## **Count Three - Conversion**

68.

The foregoing allegations are incorporated herein by reference.

69.

The Arcturus Fund is a specific, separate, identifiable fund of money and securities belonging to Arcturus that is in the possession of Geller-Stoff.

70.

Demand for repayment has been made to Geller-Stoff and the demand has been refused.

71.

Geller-Stoff has converted the Arcturus Funds to her own use.

72.

Arcturus is entitled to judgment for conversion in an amount to be determined by the finder of fact at trial.

## Count Four – Breach of Fiduciary Duty

73.

The foregoing allegations are incorporated herein by reference.

74.

Arcturus and Geller-Stoff had a confidential relationship pursuant to which Arcturus justifiably reposed trust and confidence in Geller-Stoff.  Geller-Stoff had fiduciary duties to Arcturus as a result of this relationship of trust and confidence.

75.

Pursuant to this relationship of trust and confidence, Geller-Stoff agreed to hold the Arcturus Fund in trust for the benefit of Arcturus.

76.

Pursuant to this relationship of trust and confidence, Arcturus relied upon Geller-Stoff to hold the Arcturus Fund for the benefit of Arcturus, to exercise due care in the stewardship of the Arcturus Fund, and to keep accurate records of how the Arcturus Fund was used.

77.

Pursuant to this relationship of trust and confidence, Geller-Stoff initially provided Arcturus with periodic accountings relating to the Arcturus Fund, repeatedly assuring Arcturus that the funds were only being used for Arcturus' benefit.

78.

Pursuant to this relationship of trust and confidence, Geller-Stoff also agreed to hold assets that were purchased with the Arcturus Fund in trust for the benefit of Arcturus.

79.

One of the assets purchased with the Arcturus Fund is the Mt. Laurel Property, which Geller-Stoff holds in trust for Arcturus.

80.

Geller-Stoff has intentionally breached her fiduciary duties to Arcturus by:

(a) Absconding with the Arcturus Fund;

(b) Converting Arcturus Fund property to her own use;

(c) Converting assets obtained with the Arcturus Fund to her own use; and

(d) Failing to provide an accurate accounting of the assets that she holds in

trust for Arcturus.

83.

As a proximate cause of Geller-Stoff's breach of her fiduciary duties to

Arcturus, Arcturus has been damaged in an amount to be proven at trial.

**<u>Count Five – Breach of Mt. Laurel Agreement:</u>**
**<u>Specific Performance</u>**

82.

The foregoing allegations are incorporated herein by reference.

83.

As alleged above, Arcturus and Geller-Stoff entered into a binding and

enforceable agreement pursuant to which Geller-Stoff agreed to reconvey the Mt.

Laurel Property to Arcturus if Arcturus agreed to pay off her mortgage on the

property.

84.

In 2020 and 2021, Arcturus repeatedly demanded that Geller-Stoff reconvey

the Mt. Laurel Property in exchange for Arcturus' agreement to pay off her

mortgage on the property.  Geller-Stoff refused.

85.

Geller-Stoff's breach of the Mt. Laurel Agreement entitles Arcturus to specific performance: the Mt. Laurel Agreement is certain, definite, and specific as to all essential elements: the subject matter of the agreement (which is the Mt. Laurel Properly, 11825 Mt. Laurel Drive, Roswell, Georgia); the purpose of the agreement (which is to reconvey the property to Arcturus); the parties (which are Geller-Stoff and Arcturus); the consideration (which is Arcturus' agreement to pay off the mortgage); and the time and place of performance (upon Arcturus' demand).  The Mt. Laurel Agreement also is fair in all parts and it is based upon adequate consideration, since Geller-Stoff paid nothing for the Mt. Laurel Property in the first place and specific performance will make her whole.  Given the clarity and reasonableness of the Mt. Laurel Agreement, it plainly is capable of being specifically performed.

86.

Arcturus accordingly is entitled to a judgment commanding Geller-Stoff to reconvey the Mt. Laurel Property to Arcturus under the terms of the Mr. Laurel Agreement.

## Count Six – Breach of Mt. Laurel Agreement: Damages

87.

The foregoing allegations are incorporated herein by reference.

88.

As alleged above, Arcturus and Geller-Stoff entered into a binding and

enforceable agreement pursuant to which Geller-Stoff agreed to reconvey the Mt.

Laurel Property to Arcturus if Arcturus agreed to pay off her mortgage on the

property.

89.

In 2020 and 2021, Arcturus repeatedly demanded that Geller-Stoff reconvey

the Mt. Laurel Property to Arcturus in exchange for Arcturus' agreement to pay off

the mortgage.  Geller-Stoff refused.

90.

Geller-Stoff's breach of the Mt. Laurel Agreement has caused Arcturus

substantial actual damages.  A portion of the damages caused by Geller-Stoff's

breach is the difference between the current market value of the Mt. Laurel

Property, estimated to be over $900,000, and the remaining principal amount due

under the mortgage of the property, estimated to be approximately $525,000.

91.

Geller-Stoff's prosecution of the Dispossessory also was in breach of the Mt.
Laurel Agreement and also caused Arcturus substantial money and expense,
including attorney's fees necessary to defend the Dispossessory.

92.

In addition, the wrongful eviction of Arcturus from the Mt. Laurel Property
also caused Arcturus substantial money and expense in an amount in excess of
$100,000, the exact amount to be proven at trial.

**Count Seven – Unjust Enrichment and Constructive Trust**

93.

The foregoing allegations are incorporated herein by reference.

94.

Geller-Stoff holds legal title to the Mt. Laurel Property but paid nothing for
it.  Arcturus reimbursed Geller-Stoff for the down-payment, for the monthly
mortgage payments, for property taxes, and for other expenses associated with the
Mt. Laurel Property.  Geller-Stoff agreed to convey the Mt. Laurel Property back
to Arcturus in exchange for Arcturus agreement to pay off the mortgage but has

not done so.  If allowed to keep the Mt. Laurel Property, Geller-Stoff will obtain a

windfall recovery and would be unjustly enriched at the expense of Arcturus.

95.

Arcturus is entitled to the imposition of a constructive trust on the Mt.

Laurel Property and a judgment requiring Geller-Stoff to convey to Arcturus such

property impressed with such a constructive trust.

96.

Geller-Stock holds notes, securities, and cash that are in the Arcturus Fund

or were obtained with consideration from the Arcturus Fund.  If allowed to keep

these assets, Geller-Stoff will obtain a windfall recovery and will be unjustly

enriched.

97.

Arcturus is entitled to the imposition of a constructive trust on the Arcturus

Fund and any assets obtained by Geller-Stoff using the Arcturus Fund, and a

judgment requiring Geller-Stoff to convey to Arcturus such assets impressed with a constructive trust.

98.

Arcturus also is entitled to a money judgment in damages to compensate Arcturus for Geller-Stoff's unjust enrichment.

**Count Eight – Punitive Damages**

99.

The foregoing allegations are incorporated herein by reference.

100.

Geller-Stoff's actions show willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care demonstrating conscious indifference to consequences.

101.

Arcturus is accordingly entitled to an award of punitive damages to punish, penalize, and deter Geller-Stoff.

**Count Nine – Attorney's Fees**

102.

The foregoing allegations are incorporated herein by reference.

103.

Geller-Stoff has acted in bad faith, has been stubbornly litigious, and caused Arcturus unnecessary trouble and expense.

104.

Pursuant to O.C.G.A. § 13-6-11, Arcturus is entitled to an award of expenses of litigation, including reasonable attorney's fees.

WHEREFORE, Arcturus prays:

A. For judgment in its favor on all counts of this Complaint;

B. For a trial by jury; and

C. For such other and further relief as equity and the law may require, including preliminary injunctive relief to prevent irrevocable harm during the pendency of this action.

This 16th day of November, 2021.

/s/Bruce P. Brown
Bruce P. Brown
Ga. Bar No. 064460
Bruce P. Brown Law LLC
1123 Zonolite Rd. NE
Suite 6
Atlanta, Georgia 30306
(404) 386-6856

*Counsel for Plaintiff Arcturus International LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**ARCTURUS INTERNATIONAL LLC,**

**Plaintiff,**

**v.**                                                 **Case No. _____**

**DARLENE GELLER-STOFF**

**Defendant.**

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and a point size of 14.

*/s/ Bruce P. Brown*
Bruce P. Brown

EXHIBIT

A


**Bank of America**

P.O. Box 15284
Wilmington, DE 19850

**Customer service information**

📞  1.888.BUSINESS (1.888.287.4637)

💻  bankofamerica.com

✉️  Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

ANDERLEX HOLDINGS LLC
OPERATING ACCOUNT
885 WOODSTOCK RD STE 430-319
ROSWELL, GA  30075

# Your Business Advantage Checking

for April 8, 2016 to April 30, 2016                              Account number: 3340 4678 6042

**ANDERLEX HOLDINGS LLC     OPERATING ACCOUNT**

## Account summary

| | | |
|---|---|---|
| Beginning balance on April 8, 2016 | $0.00 | # of deposits/credits: 1 |
| Deposits and other credits | 250,000.00 | # of withdrawals/debits: 9 |
| Withdrawals and other debits | -35,919.99 | # of items-previous cycle[1]: 0 |
| Checks | -51,500.00 | # of days in cycle: 23 |
| Service fees | -20.00 | Average ledger balance: $204,403.96 |
| **Ending balance on April 30, 2016** | **$162,560.01** | [1]Includes checks paid,deposited items&other debits |



# Our country is built on businesses like yours

In cities and towns across the country, we celebrate business owners like you
during **National Small Business Week**, May 1 – 7. We're also here to
support you week after week, year after year.

Take advantage of expert insight, insider tips and more in the
Small Business Community at **bankofamerica.com/bizweek**.

Bank of America, N.A. ©2016 Bank of America Corporation. | ARP3WXLW | SSM-01-16-8372.B

PJLL: E  CYCLE: 48  SPEC: 0  DELIVERY: P  TYPE:   IMAGE: A  BC: GA

ANDERLEX HOLDINGS LLC   |   Account # 3340 4678 6042   |   April 8, 2016 to April 30, 2016

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking. Or, you can call our Customer Service team.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time.  These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals.  Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers- If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can.  We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- − Tell us your name and account number.
- − Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- − Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly.  You are in the best position to discover errors and unauthorized transactions on your account.  If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree to not make a claim against us for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled.  You may also review your activity online or visit a financial center for information.

© 2016 Bank of America Corporation

 Bank of America, N.A. Member FDIC and   Equal Housing Lender

 **Bank of America**

**Your checking account**

ANDERLEX HOLDINGS LLC   |   Account # 3340 4678 6042   |   April 8, 2016 to April 30, 2016

## Deposits and other credits

| Date | Description | Amount |
|---|---|---|
| 04/08/16 | Deposit | 250,000.00 |
| **Total deposits and other credits** | | **$250,000.00** |

## Withdrawals and other debits

| Date | Description | Amount |
|---|---|---|
| 04/11/16 | Agent Assisted transfer to CHK 0406 Confirmation# 1438482238 | -100.00 |
| 04/15/16 | TRANSFER ANDERLEX HOLDINGS LL:Arcturus Internation Confirmation# 0574878817 | -25,000.00 |
| 04/15/16 | TRANSFER ANDERLEX HOLDINGS LL:Vick Law Group Confirmation# 1674891493 | -10,000.00 |
| Card account # XXXX XXXX XXXX 1486 | | |
| 04/19/16 | CHECKCARD 0417 VERIZON WRLS 0617 ALPHARETTA  GA 55419376109666189260822 CKCD 4812 XXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -720.99 |
| 04/28/16 | CHECKCARD 0427 ONLINECORPORATEDO 415-9927670  MI 85104856119900015646532 CKCD 7399 XXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -99.00 |
| **Subtotal for card account # XXXX XXXX XXXX 1486** | | **-$819.99** |
| **Total withdrawals and other debits** | | **-$35,919.99** |

## Checks

| Date | Check # | Amount |
|---|---|---|
| 04/15/16 | 991 | -20,000.00 |

| Date | Check # | Amount |
|---|---|---|
| 04/26/16 | 1001* | -31,500.00 |
| **Total checks** | | **-$51,500.00** |
| **Total # of checks** | | **2** |

*  *There is a gap in sequential check numbers*



# Stay informed around the clock

**Online Alerts**[1] help keep you informed.
- Monitor your account balances and receive alerts when payments are due
- Be notified when transactions have cleared

To activate Alerts, go to **bankofamerica.com/smallbusiness**
and click on **Alerts** in the Activity Center.



Small Business
Online Banking

TIP OF THE MONTH

[1]Alerts received as text messages on your mobile access device may incur a charge from your mobile access service provider. This feature is not
available on the Mobile website. Wireless carrier fees may apply. | ARSXKMCP | SSM-01-16-8548.B

**ANDERLEX HOLDINGS LLC   |   Account # 3340 4678 6042   |   April 8, 2016 to April 30, 2016**

## Service fees

| Date | Transaction description | Amount |
|---|---|---|
| 04/18/16 | External transfer fee - Next Day - 04/15/2016 | -10.00 |
| 04/18/16 | External transfer fee - Next Day - 04/15/2016 | -10.00 |
| **Total service fees** | | **-$20.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 04/08 | 250,000.00 | 04/18 | 194,880.00 | 04/26 | 162,659.01 |
| 04/11 | 249,900.00 | 04/19 | 194,159.01 | 04/28 | 162,560.01 |
| 04/15 | 194,900.00 | | | | |

 To help you BALANCE YOUR CHECKING ACCOUNT, visit bankofamerica.com/statementbalance or the Statements and Documents tab in Online Banking for a printable version of the How to Balance Your Account Worksheet.

E
X
H
I
B
I
T

B

*Bus Platinum Privileges*

**Bank of America**

P.O. Box 15284
Wilmington, DE 19850

### Customer service information

1.888.BUSINESS (1.888.287.4637)

bankofamerica.com

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

ANDERLEX HOLDINGS LLC
OPERATING ACCOUNT
885 WOODSTOCK RD STE 430-319
ROSWELL, GA  30075

## Your Business Advantage Checking
## Bus Platinum Privileges

for May 1, 2016 to May 31, 2016

Account number: 3340 4678 6042

**ANDERLEX HOLDINGS LLC    OPERATING ACCOUNT**

## Account summary

| | | |
|---|---:|---|
| Beginning balance on May 1, 2016 | $162,560.01 | # of deposits/credits: 2 |
| Deposits and other credits | 1,000,346.00 | # of withdrawals/debits: 46 |
| Withdrawals and other debits | -144,992.29 | # of items-previous cycle[1]: 3 |
| Checks | -114,096.02 | # of days in cycle: 31 |
| Service fees | -9.00 | Average ledger balance: $275,690.76 |
| **Ending balance on May 31, 2016** | **$903,808.70** | [1]Includes checks paid,deposited items&other debits |



# Upgrade your point-of-sale system

Clover® solutions: The latest in payment processing and more —
all to help you manage your business's unique needs.

Learn more at **bankofamerica.com/GoClover.**

**Bank of America**
**Merchant Services**

© 2016 Banc of America Merchant Services, LLC. All rights reserved. All trademarks, service marks and trade names referenced in this material are the property of
and licensed by their respective owners. Merchant Services are provided by Bank of America, N.A. and its representative Banc of America Merchant Services, LLC.
Banc of America Merchant Services, LLC is not a bank, does not offer bank deposits, and its services are not guaranteed or insured by the FDIC or any other
governmental agency.  ARW37FF8 | SSM-01-16-8370.B

PULL: E  CYCLE: 48  SPEC: 0  DELIVERY: P  TYPE:   IMAGE: A  BC: GA

ANDERLEX HOLDINGS LLC   |   Account # 3340 4678 6042   |   May 1, 2016 to May 31, 2016

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking. Or, you can call our Customer Service team.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers- If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree to not make a claim against us for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2016 Bank of America Corporation

 Bank of America, N.A. Member FDIC and       Equal Housing Lender

 **Bank of America**

**Your checking account**

ANDERLEX HOLDINGS LLC   |   Account # 3340 4678 6042   |   May 1, 2016 to May 31, 2016

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|--------|
| 05/16/16 | REVERSAL ANDERLEX HOLDINGS LL:Bank of New York Confirmation# 0542962180 | 110,856.00 |
| 05/25/16 | WIRE TYPE:WIRE IN DATE: 160525 TIME:1600 ET TRN:201605250033 8186 SEQ: /000136 ORIG:DAN RIZZO ATTORNEY AT LAW ID:10010018582 SND BK:PARK STERLING BANK ID:053012728 PMT DET:PRO CEEDS | 889,490.00 |
| **Total deposits and other credits** | | **$1,000,346.00** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|--------|
| 05/04/16 | TRANSFER ANDERLEX HOLDINGS LL:Arcturus International Confirmation# 0538955954 | -3,000.00 |
| 05/04/16 | TRANSFER ANDERLEX HOLDINGS LL:Oken Confirmation# 0539015051 | -1,310.00 |
| 05/10/16 | TRANSFER ANDERLEX HOLDINGS LL:Bank of New York Confirmation# 1690757055 | -110,856.00 |
| 05/31/16 | TRANSFER ANDERLEX HOLDINGS LL:Arcturus International Confirmation# 1469737996 | -10,000.00 |

Card account # XXXX XXXX XXXX 1486

| Date | Description | Amount |
|------|-------------|--------|
| 05/02/16 | CHECKCARD  0429 PURE TAQUERIA WOO WOODSTOCK    GA 55436876121641212308858 CKCD 5812 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -102.41 |
| 05/04/16 | CHECKCARD  0503 TUCCIS ROSWELL    GA 55421356125987180623661 CKCD 5931 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -318.86 |
| 05/05/16 | CHECKCARD  0503 THE HOME DEPOT 14 ROSWELL    GA 55541866125010182197924 CKCD 5200 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -110.15 |
| 05/09/16 | BKOFAMERICA ATM 05/07 #000002909 WITHDRWL CROSSVILLE    ROSWELL    GA | -600.00 |
| 05/09/16 | BKOFAMERICA ATM 05/08 #000003104 WITHDRWL CROSSVILLE    ROSWELL    GA | -700.00 |
| 05/09/16 | BKOFAMERICA ATM 05/09 #000009120 WITHDRWL CROSSVILLE    ROSWELL    GA | -700.00 |
| 05/10/16 | BKOFAMERICA ATM 05/10 #000009132 WITHDRWL CROSSVILLE    ROSWELL    GA | -700.00 |
| 05/11/16 | CHECKCARD  0510 CANS TAQUERIA MILTON    GA 55444366132207888700049 CKCD 5812 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -60.25 |
| 05/11/16 | BKOFAMERICA ATM 05/11 #000008399 WITHDRWL DUNWOODY PLACE    ATLANTA    GA | -680.00 |
| 05/11/16 | DILLARDS  NORT  05/11 #000227489 PURCHASE DILLARDS  NORTHPO ALPHARETTA    GA | -59.53 |
| 05/11/16 | WINDSOR FASHIO  05/11 #000284435 PURCHASE 1000 NORTH PINT C ALPHARETTA    GA | -41.62 |
| 05/12/16 | BKOFAMERICA ATM 05/12 #000009168 WITHDRWL CROSSVILLE    ROSWELL    GA | -700.00 |
| 05/12/16 | TARGET T- 1135  05/12 #000112074 PURCHASE TARGET T- 1135 Wo  Roswell    GA | -46.81 |

*continued on the next page*



# Do what you love.
# Let us help with the rest.

Watch videos about products and services that can make running your business easier, including the Clover® Station* point-of-sale system.

## Visit bankofamerica.com/SBvideos.

*Clover Station requires Clover Mobile, Clover Mini, or FD40 equipment to accept EMV® and Apple Pay™ transactions.
©2015 Bank of America Corporation  ARKCBSKB | SSM-09-15-0535.B

ANDERLEX HOLDINGS LLC   |   Account # 3340 4678 6042   |   May 1, 2016 to May 31, 2016

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|--------|
| 05/13/16 | CHECKCARD  0512 THAI EMERALD ROSWELL      GA 5544436613455601878517 3 CKCD 5812 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -109.00 |
| 05/13/16 | BKOFAMERICA ATM 05/13 #000009213 WITHDRWL CROSSVILLE      ROSWELL      GA | -700.00 |
| 05/16/16 | CHECKCARD  0512 UNITED 800-932-2732 TX 5543286613400023180980 2 CKCD 3000 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -37.06 |
| 05/16/16 | CHECKCARD  0512 UNITED 800-932-2732 TX 5543286613400023199862 1 CKCD 3000 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -564.38 |
| 05/16/16 | BKOFAMERICA ATM 05/15 #000004190 WITHDRWL CROSSVILLE      ROSWELL      GA | -680.00 |
| 05/16/16 | BKOFAMERICA ATM 05/16 #000009287 WITHDRWL CROSSVILLE      ROSWELL      GA | -700.00 |
| 05/17/16 | BKOFAMERICA ATM 05/17 #000009326 WITHDRWL CROSSVILLE      ROSWELL      GA | -600.00 |
| 05/18/16 | BKOFAMERICA ATM 05/18 #000009378 WITHDRWL CROSSVILLE      ROSWELL      GA | -700.00 |
| 05/19/16 | BKOFAMERICA ATM 05/19 #000006137 WITHDRWL CROSSVILLE      ROSWELL      GA | -700.00 |
| 05/20/16 | CHECKCARD  0519 VINGENZO'S WOODSTOCK    GA 5554754614157739701003 7 CKCD 5812 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -134.18 |
| 05/20/16 | BKOFAMERICA ATM 05/20 #000003634 WITHDRWL CROSSVILLE      ROSWELL      GA | -700.00 |
| 05/23/16 | BKOFAMERICA ATM 05/21 #000009459 WITHDRWL CROSSVILLE      ROSWELL      GA | -700.00 |
| 05/23/16 | BKOFAMERICA ATM 05/23 #000002874 WITHDRWL ROSWELL       ROSWELL      GA | -700.00 |
| 05/23/16 | MACY'S    5000  05/23 #000926434 PURCHASE MACY'S    5000 N  ALPHARETTA   GA | -80.25 |
| 05/24/16 | CHECKCARD  0523 ABERCROMBIE & FIT ALPHARETTA   GA 0543684614500019058668 0 CKCD 5691 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -110.17 |
| 05/25/16 | CHECKCARD  0523 THE MENS WEARHOUS ALPHARETTA   GA 5545370614580744232106 5 CKCD 5611 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -353.08 |
| 05/25/16 | BKOFAMERICA ATM 05/25 #000009576 WITHDRWL CROSSVILLE      ROSWELL      GA | -700.00 |
| 05/26/16 | CHECKCARD  0525 RED BARON S ATLANTA      GA 7550499614790001460011 5 CKCD 5932 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -3,053.53 |
| 05/26/16 | BKOFAMERICA ATM 05/26 #000009598 WITHDRWL CROSSVILLE      ROSWELL      GA | -700.00 |
| 05/27/16 | BKOFAMERICA ATM 05/27 #000005713 WITHDRWL CROSSVILLE      ROSWELL      GA | -700.00 |
| 05/31/16 | CHECKCARD  0527 APPLE STORE  #R08 ALPHARETTA   GA 5543286614900013212378 5 CKCD 5732 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -1,550.38 |
| 05/31/16 | CHECKCARD  0528 ST REGIS ATLANTA ATLANTA      GA 5543687615016150134075 5 CKCD 5812 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -34.63 |
| 05/31/16 | BKOFAMERICA ATM 05/31 #000007425 WITHDRWL PEACHTREE CENTER  ATLANTA      GA | -700.00 |
| **Subtotal for card account # XXXX XXXX XXXX 1486** | | **-$19,826.29** |
| **Total withdrawals and other debits** | | **-$144,992.29** |

## Checks

| Date | Check # | Amount | | Date | Check # | Amount |
|------|---------|--------|---|------|---------|--------|
| 05/17/16 | 1002 | -110,856.00 | | 05/27/16 | 5002 | -2,790.02 |
| 05/26/16 | 5001* | -450.00 | | | | |
| | | | | **Total checks** | | **-$114,096.02** |
| | | | | **Total # of checks** | | **3** |

*  There is a gap in sequential check numbers

# Bank of America

**Your checking account**

**ANDERLEX HOLDINGS LLC** | Account # 3340 4678 6042 | May 1, 2016 to May 31, 2016

## Service fees

Based upon the activity below, the monthly fee on your Business Advantage checking account was waived for the statement period ending 04/29/16:

| You are an active user of one of the following services | OR | | At least one of the following occurred during the previous month |
|---|---|---|---|
| ○ Bank of America Merchant Services | | ○ $2,500+ | in net new purchases on a linked Business credit card |
| ○ Payroll Service by Intuit® | | ✓ $15,000+ | average monthly balance in primary checking account |
| ○ Small Business Remote Deposit Online Service | | ✓ $35,000+ | combined average monthly balance in linked business accounts |

A check mark indicates that you have qualified for a monthly fee waiver on the account based on your usage of these products or services. For information on how to open a new product or to link an existing service to your account please call 1-888-BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|---|---|---|
| 05/05/16 | External transfer fee - 3 Day -  05/04/2016 | -3.00 |
| 05/05/16 | External transfer fee - 3 Day -  05/04/2016 | -3.00 |
| 05/11/16 | External transfer fee - 3 Day -  05/10/2016 | -3.00 |
| **Total service fees** | | **-$9.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 05/01 | 162,560.01 | 05/12 | 42,565.38 | 05/23 | 35,460.51 |
| 05/02 | 162,457.60 | 05/13 | 41,756.38 | 05/24 | 35,350.34 |
| 05/04 | 157,828.74 | 05/16 | 150,630.94 | 05/25 | 923,787.26 |
| 05/05 | 157,712.59 | 05/17 | 39,174.94 | 05/26 | 919,583.73 |
| 05/09 | 155,712.59 | 05/18 | 38,474.94 | 05/27 | 916,093.71 |
| 05/10 | 44,156.59 | 05/19 | 37,774.94 | 05/31 | 903,808.70 |
| 05/11 | 43,312.19 | 05/20 | 36,940.76 | | |

✓ To help you BALANCE YOUR CHECKING ACCOUNT, visit bankofamerica.com/statementbalance or the Statements and Documents tab in Online Banking for a printable version of the How to Balance Your Account Worksheet.

This page intentionally left blank

BUSINESS PLATINUM PRIVILEGES(TM)

# Congratulations! You have qualified for our business rewards and recognition program.

As one of our high balance customers, you have automatically qualified for the Business Platinum Privileges(TM) program (footnote 1) because you maintain a combined balance of $50,000 or more in business deposit accounts with Bank of America and you have a small business checking account. This complimentary program, which comes at no cost to you, includes the following extra benefits:

- A Priority Service Team, dedicated small business customer service specialists to answer your questions quickly and efficiently

- No minimum balance requirement on business savings with the Platinum Business Interest Maximizer(TM) account (footnote 2), and you will pay no monthly maintenance fee

- Reduced rates when you open a new business line of credit (footnote 3)

- Access to Merrill Edge® investment and retirement services, designed to meet the unique needs of small businesses, plus, get up to $600 when you open and fund a Merrill Edge Business Investor Account (footnote 4)

Learn more about the Business Platinum Privileges program today.

Visit bankofamerica.com/businessplatinum or stop by the nearest financial center.

Call 888.BUSINESS (888.287.4637) to speak with our dedicated Priority Service Team.

Note: When calling our dedicated customer service specialists, please have your Access ID/PIN or your Bank of America account number on hand to verify your account.





Investment products:

| Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |
| --- | --- | --- |

*(Please see reverse for important disclosures.)*

Addendum to:

Business Schedule of Fees (Effective November 6, 2015)

This Addendum supplements the Business Schedule of Fees. Please retain this document for your records. For purposes of this Addendum, "you" and "your" means the corporation, unincorporated association, limited liability company, limited liability partnership, partnership, sole proprietorship, or other entity holding a business account (other than a Commercial account) with Bank of America in any capacity other than an individual capacity.

Business Platinum Privileges(TM)

You automatically qualify for the Business Platinum Privileges program when you maintain a combined balance of $50,000 or more in eligible business deposit accounts with Bank of America, and you have an open Business Fundamentals® checking, Business Interest checking or Business Advantage checking account with Bank of America. The combined balance requirement is calculated based on the average daily balance for the month in your Bank of America business deposit account(s), and applies only when the owner of the business checking account and the owner of the other eligible deposit account(s) share the same Taxpayer Identification Number (TIN). Public service trust accounts, such as IOLTA accounts, are not counted toward the combined balance. Your enrollment in Business Platinum Privileges becomes effective in the month following the month in which you qualify. Some Business Platinum Privileges benefits are automatic; other benefits may require you to open a new account or take other action. Read carefully the terms of any Business Platinum Privileges offer to understand the action required.

The benefits of the Business Platinum Privileges program will be described to you separately. We may change or terminate Business Platinum Privileges program rules or benefits at any time, without prior notice. Your enrollment in Business Platinum Privileges will discontinue if you do not qualify during a calendar quarter, and you do not restore your qualification during the following calendar quarter. You will be considered not qualified during a calendar quarter if neither your average daily balance for the quarter nor your quarter end balance satisfy the combined balance requirement, or you do not have an open, eligible business checking account with Bank of America as of the end of the quarter.

For Merrill Lynch Wealth Management clients, your eligible combined balances will be reviewed annually to ensure you continue to qualify for benefits. Your enrollment in Business Platinum Privileges will discontinue if you do not qualify at the annual review, and you do not restore your qualification within a 90 day period. You will be considered not qualified at the annual review if your average daily balance for the prior 12 months did not satisfy the combined balance requirement, or you do not have an open eligible business checking account with Bank of America at the end of such year. The annual review will be conducted as of June 30 of each year. In the event that your enrollment is discontinued, your Business Platinum Privileges benefits may be discontinued immediately without further notice. If you have defaulted on a business credit account with Bank of America or its affiliates, we may exclude you from eligibility for Business Platinum Privileges. If you are enrolled in Business Platinum Privileges and you default under a business credit account with Bank of America or its affiliates, we may immediately discontinue your enrollment in Business Platinum Privileges. You will be considered for re-enrollment after 12 months. Review for defaults will be conducted monthly.

1 Please see the above Business Platinum Privileges Addendum to your Business Schedule of Fees.

2 New Business Platinum Privileges™ customers at point of sale will be eligible to open up a Platinum Business Interest Maximizer™ savings account immediately, but will be enrolled officially in the program the following month. Other benefits will activate upon enrollment. The Platinum Business Interest Maximizer™ account is only available on request to customers enrolled in the Business Platinum Privileges program, or whose opening balance qualifies them for the Business Platinum Privileges program. Limit of one Platinum Business Interest Maximizer™ account may be opened per customer. Your enrollment in Business Platinum Privileges will not automatically convert any existing or new money market savings account to a Platinum Business Interest Maximizer™ without your request. See the enclosed Business Platinum Privileges Addendum for a description of the requirements for enrollment in Business Platinum Privileges. If your enrollment in the Business Platinum Privileges program is discontinued, your Platinum Business Interest Maximizer™ account will automatically convert to a Business Interest Maximizer™ account and the interest rate and fees for that subsequent account will apply.

3 Credit is subject to approval; normal credit standards apply. Credit is issued by Bank of America, N.A.

4 To qualify for this cash offer, you must open a Merrill Edge® Business Investor Account ("BIA") and fund the account within 45 days with funds originating from outside Merrill Lynch and Bank of America. The balance must be held in the account for a minimum of 90 consecutive days following the funding date. For purposes of this offer, qualifying balance shall mean total incoming assets or transfers (including cash, securities and/or margin debit balance transfers) from external accounts, minus assets withdrawn or transferred out of the account within the 90 day holding period. The cash reward will be paid out as follows: $20,000-$49,999, receive $100; for $50,000-$99,999, receive $150; for $100,000-$199,999, receive $250; for $200,000 or more, receive $600. The reward will be paid within two weeks after meeting the qualifying criteria. Depending on your particular circumstances, the value of this reward you receive may constitute taxable income. In addition, Merrill Lynch may issue an Internal Revenue Service Form 1099 (or other appropriate form) to you that reflects the value of such reward. Please consult your tax advisor. Merrill Edge reserves the right to change or cancel this offer at any time. Merrill Edge does not provide legal or tax advice.

The offering of cash rewards, free trades, waiver of fees (including account fees), and/or any other thing of value may not be used as an inducement to sell any kind of insurance, including life insurance or annuities.

Some Merrill Edge® benefits may be available to customers with less than $50,000 in investable assets. Please speak with a Financial Solutions Advisor for more information about Merrill Edge®.

The BIA account is a brokerage account, not a bank account. Deposit items such as checks, wires and ACH transactions are subject to availability delays based on deposit type and assets held at Merrill Lynch. Please refer to the account documents for more information. The BIA account has limits on monthly disbursements: More than three checks in any calendar month or six total disbursements in any calendar month. Withdrawals exceeding these limits are subject to a $15 fee per item.

Merrill Edge is available through Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S), and consists of the Merrill Edge Advisory Center (investment guidance) and self-directed online investing.

MLPF&S is a registered broker-dealer, member SIPC and a wholly owned subsidiary of Bank of America Corporation.

Banking products are provided by Bank of America, N.A., and affiliated banks, Members FDIC and wholly owned subsidiaries of Bank of America Corporation. Platinum Business Interest Maximizer and Business Platinum Privileges are trademarks and Merrill Edge, Business Fundamentals, Bank of America and the Bank of America logo are registered trademarks of Bank of America Corporation.

Bank of America, N.A. Member FDIC. ©2016 Bank of America Corporation.   AR8RWPP3  SSM-10-15-0350.B

EXHIBIT

C

*Bus Platinum Privileges*

**Bank of America**

P.O. Box 15284
Wilmington, DE 19850

ANDERLEX HOLDINGS LLC
OPERATING ACCOUNT
885 WOODSTOCK RD STE 430-319
ROSWELL, GA  30075

### Customer service information

1.888.BUSINESS (1.888.287.4637)

bankofamerica.com

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

# Your Business Advantage Checking
# Bus Platinum Privileges

for December 1, 2016 to December 31, 2016

Account number: 3340 4678 6042

**ANDERLEX HOLDINGS LLC     OPERATING ACCOUNT**

## Account summary

| | |
|---|---|
| Beginning balance on December 1, 2016 | $1,936.05 |
| Deposits and other credits | 388,000.00 |
| Withdrawals and other debits | -380,429.02 |
| Checks | -0.00 |
| Service fees | -138.45 |
| **Ending balance on December 31, 2016** | **$9,368.58** |

| |
|---|
| # of deposits/credits: 5 |
| # of withdrawals/debits: 47 |
| # of items-previous cycle[1]: 0 |
| # of days in cycle: 31 |
| Average ledger balance: $11,720.38 |
| [1]Includes checks paid,deposited items&other debits |



## Stay informed around the clock

**Online Alerts**[1] help keep you informed.

- Monitor your account balances and receive alerts when payments are due
- Be notified when transactions have cleared

To activate Alerts, go to **bankofamerica.com/smallbusiness**
and click on **Alerts** in the Activity Center.

TIP OF THE MONTH



[1]Alerts received as text messages on your mobile access device may incur a charge from your mobile service provider. This feature is not available on the Mobile website. Wireless carrier fees may apply. | AR5XKMCP | SSM-01-16-8548.B

ANDERLEX HOLDINGS LLC   |   Account # 3340 4678 6042   |   December 1, 2016 to December 31, 2016

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking. Or, you can call our Customer Service team.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree to not make a claim against us for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2016 Bank of America Corporation

 **Bank of America, N.A. Member FDIC and    Equal Housing Lender**

**Bank of America** ≫

**Your checking account**

ANDERLEX HOLDINGS LLC   |   Account # 3340 4678 6042   |   December 1, 2016 to December 31, 2016

## Deposits and other credits

| Date | Description | Amount |
|------|-------------|-------:|
| 12/05/16 | Online Banking transfer from BRK 5N24 Confirmation# 0395395643 | 2,500.00 |
| 12/14/16 | Online Banking transfer from BRK 5N24 Confirmation# 3873315393 | 5,000.00 |
| 12/16/16 | WIRE TYPE:WIRE IN DATE: 161216 TIME:1149 ET TRN:2016121600266428 SEQ:2016121600003454/389850 ORIG:TRADE CAPITAL LLC ID:0005203660695 SND BK:BRA NCH BANKING AND TRUST COMP ID:0160 PMT DET: 563223 2WTQPFULL PAYMENT OF $306,000 RODAV NOTE AND $76,5 | 352,500.00 |
| 12/29/16 | Online Banking transfer from BRK 5N24 Confirmation# 3897845269 | 25,000.00 |
| 12/30/16 | Online Banking transfer from BRK 5N24 Confirmation# 1406530041 | 3,000.00 |
| **Total deposits and other credits** | | **$388,000.00** |

## Withdrawals and other debits

| Date | Description | Amount |
|------|-------------|-------:|
| 12/15/16 | Online Banking transfer to BRK 5N24 Confirmation# 2983555558 | -4,000.00 |
| 12/16/16 | Online Banking transfer to BRK 5N24 Confirmation# 3890922264 | -325,000.00 |
| 12/29/16 | TRANSFER ANDERLEX HOLDINGS LL:Vick Law Group Confirmation# 1401350546 | -10,000.00 |
| 12/29/16 | TRANSFER ANDERLEX HOLDINGS LL:Arcturus Internation Confirmation# 3801350588 | -7,500.00 |
| 12/29/16 | TRANSFER ANDERLEX HOLDINGS LL:Gala LLC Confirmation# 1401350651 | -10,000.00 |
| 12/30/16 | WIRE TYPE:WIRE OUT DATE:161230 TIME:1126 ET TRN:2016123000268173 SERVICE REF:009841 BNF:GK BUSINESS SERVICES ID:8002015017 BNF BK:COME RICA BANK ID:121137522 PMT DET:190500032 | -4,000.00 |

Card account # XXXX XXXX XXXX 1486

| Date | Description | Amount |
|------|-------------|-------:|
| 12/05/16 | CHECKCARD  1202 FEDEX 78482793403 MEMPHIS       TN 15410196337741161289450 CKCD 4215 XXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -34.50 |
| 12/05/16 | CHECKCARD  1202 CANS TAQUERIA MILTON       GA 55444366338207888700298 CKCD 5812 XXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -73.43 |
| 12/05/16 | CHECKCARD  1204 BP#9723412BP CRAB ROSWELL       GA 55316586339740339900049 CKCD 5542 XXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -16.19 |
| 12/05/16 | BKOFAMERICA ATM 12/04 #000009579 WITHDRWL CHATSWORTH       CHATSWORTH   CA | -700.00 |
| 12/12/16 | CHECKCARD  1208 AMERICAN 08004337300  TX 55310206344978000394910 CKCD 3001 XXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -334.20 |

continued on the next page

## How can we improve your business banking?

Join the **Bank of America® Advisory Panel.** You can help us learn what we're doing right and what we can do better. And you'll be entered into a drawing for a chance to win a **$3,000** Visa® gift card just for participating.

To learn more and join, enter code **SBDD** at **bankofamerica.com/advisorypanel** today.

No purchase necessary. Sweepstakes ends 2/28/2017. Open to all U.S. residents, 18 years of age or older. For official rules and entry go to bankofamerica.com/advisorypanel. Void where prohibited. ©2016 Bank of America Corporation. ARGGNCDF | SSM-05-16-0087.B

ANDERLEX HOLDINGS LLC   |   Account # 3340 4678 6042   |   December 1, 2016 to December 31, 2016

## Withdrawals and other debits - continued

| Date | Description | Amount |
|---|---|---|
| 12/12/16 | CHECKCARD  1208 AMERICAN 08004337300  TX 5531020634497800039747S CKCD 3001 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -394.20 |
| 12/12/16 | CHECKCARD  1208 AMERICAN 08004337300  TX 5531020634497800039747S CKCD 3001 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -394.20 |
| 12/14/16 | CHECKCARD  1212 IN AND OUT LTD LONDON          2542515634903004608S933 CKCD 7011 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -1,616.82 |
| 12/14/16 | BKOFAMERICA ATM 12/14 #000003401 WITHDRWL CHATSWORTH          CHATSWORTH    CA | -700.00 |
| 12/15/16 | BKOFAMERICA ATM 12/15 #000008624 WITHDRWL CROSSVILLE          ROSWELL      GA | -700.00 |
| 12/16/16 | CHECKCARD  1215 GOGOAIR.COM 877-350-0038 IL 5543286635000078SS72886 CKCD 4816 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -8.50 |
| 12/16/16 | WM SUPERCENTER  12/16 #000770191 PURCHASE Wal-Mart Super Ce ROSWELL        GA | -362.73 |
| 12/19/16 | BKOFAMERICA ATM 12/17 #000002385 WITHDRWL CROSSVILLE          ROSWELL      GA | -700.00 |
| 12/19/16 | CHECKCARD  1217 BP#9723412BP CRAB ROSWELL      GA 5531658635274035207041S CKCD 5542 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -22.00 |
| 12/19/16 | CHECKCARD  1217 VERIZON WRLS 0617 ALPHARETTA   GA 5541937635366616930952S CKCD 4812 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -106.23 |
| 12/19/16 | CHECKCARD  1217 VERIZON WRLS 0617 ALPHARETTA   GA 5541937635366616930948S CKCD 4812 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -89.30 |
| 12/20/16 | BKOFAMERICA ATM 12/20 #000004380 WITHDRWL TOPANGA PLAZA MA  CANOGA PARK  CA | -700.00 |
| 12/21/16 | BKOFAMERICA ATM 12/21 #000003678 WITHDRWL CANOGA PARK          CANOGA PARK  CA | -700.00 |
| 12/23/16 | CHECKCARD  1222 ROYAL JO 02129490070  NY 5554807635863090018334S CKCD 4511 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -2,872.40 |
| 12/23/16 | CHECKCARD  1222 ROYAL JO 02129490070  NY 5554807635863090018335S CKCD 4511 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -2,872.40 |
| 12/23/16 | CHECKCARD  1223 Orbitz*7231885266 ORBITZ.COM  WA 5543286635800085740798S CKCD 4722 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -149.79 |
| 12/27/16 | CHECKCARD  1223 PLN*PRICELINE.COM 800-340-0575 CT 5543286635800013567296S CKCD 4722 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -18.00 |
| 12/27/16 | CHECKCARD  1222 EMIRATES NORWALK        CT 554173463588735836470S4 CKCD 3026 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -1,275.36 |
| 12/27/16 | CHECKCARD  1222 EMIRATES NORWALK        CT 554173463588735836470S6 CKCD 3026 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -1,275.36 |
| 12/27/16 | CHECKCARD  1223 ASURIONWIRELESS I 866-6672535  TN 754182363580338843635S4 CKCD 6300 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -199.00 |
| 12/27/16 | CHECKCARD  1224 AMERICAN BELLEVUE    WA 5541734636087360140741S CKCD 3001 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -516.70 |
| 12/27/16 | BKOFAMERICA ATM 12/24 #000001852 WITHDRWL PORTER RANCH          NORTHRIDGE   CA | -700.00 |
| 12/27/16 | CHECKCARD  1226 OUTBACK 1126 ROSWELL      GA 5543286636200097959028S CKCD 5812 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -96.61 |
| 12/27/16 | SPEEDWAY 08495  12/27 #000328282 PURCHASE SPEEDWAY 08495 AL ALPHARETTA    GA | -23.83 |
| 12/27/16 | BKOFAMERICA ATM 12/27 #000005393 WITHDRWL CROSSVILLE          ROSWELL      GA | -700.00 |
| 12/28/16 | CHECKCARD  1228 UBER US DEC28 I5S 8005928996  CA 152702163635483316513S4 CKCD 4121 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -36.66 |
| 12/28/16 | BKOFAMERICA ATM 12/28 #000003598 WITHDRWL PORTER RANCH          NORTHRIDGE   CA | -700.00 |
| 12/29/16 | CHECKCARD  1228 LAX AIRPORT LOT P LOS ANGELES  CA 554368763631736381547OS CKCD 7523 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -87.00 |
| 12/29/16 | BKOFAMERICA ATM 12/29 #000003801 WITHDRWL PORTER RANCH          NORTHRIDGE   CA | -700.00 |
| 12/30/16 | CHECKCARD  1229 UBER  US DEC29 A 8005928996  CA 5542950636471960411235S CKCD 4121 XXXXXXXXXXXX1486 XXXX XXXX XXXX 1486 | -53.61 |
| **Subtotal for card account # XXXX XXXX XXXX 1486** | | **-$19,929.02** |
| **Total withdrawals and other debits** | | **-$380,429.02** |

# Bank of America

**Your checking account**

ANDERLEX HOLDINGS LLC  |  Account # 3340 4678 6042  |  December 1, 2016 to December 31, 2016

## Service fees

Based on the activity on your business accounts for the statement period ending 11/30/16, a Monthly Fee was charged for your Business Advantage checking account (Primary).  You can avoid the fee in the future by meeting one of the requirements below:

You are an active user of one of the following services

OR

At least one of the following occurred during the previous month

○ Bank of America Merchant Services

○ Payroll Services

○ $2,500+ in net new purchases on a linked Business credit card

○ $15,000+ average monthly balance in primary checking account

○ $35,000+ combined average monthly balance in linked business accounts

A check mark indicates that you have qualified for a monthly fee waiver on the account based on your usage of these products or services. For information on how to open a new product or to link an existing service to your account please call 1-888-BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|---|---|---|
| 12/01/16 | Monthly Fee for Business Advantage | -29.95 |
| 12/14/16 | CHECKCARD  1212 IN AND OUT LTD LONDON 2542515634903004608593 3 CKCD 7011 XXXXXXXXXXX1486 INTERNATIONAL TRANSACTION FEE | -48.50 |
| 12/30/16 | Wire Transfer Fee | -30.00 |
| 12/30/16 | External transfer fee - Next Day - 12/29/2016 | -10.00 |
| 12/30/16 | External transfer fee - Next Day - 12/29/2016 | -10.00 |
| 12/30/16 | External transfer fee - Next Day - 12/29/2016 | -10.00 |
| **Total service fees** | | **-$138.45** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|---|---|---|---|---|---|
| 12/01 | 1,906.10 | 12/16 | 27,522.83 | 12/27 | 14,505.85 |
| 12/05 | 3,581.98 | 12/19 | 26,605.30 | 12/28 | 13,769.19 |
| 12/12 | 2,459.38 | 12/20 | 25,905.30 | 12/29 | 10,482.19 |
| 12/14 | 5,094.06 | 12/21 | 25,205.30 | 12/30 | 9,368.58 |
| 12/15 | 394.06 | 12/23 | 19,310.71 | | |

ANDERLEX HOLDINGS LLC   |   Account # 3340 4678 6042   |   December 1, 2016 to December 31, 2016

This page intentionally left blank

E

X

H

I

B

I

T

D

# *BIA*  Fiscal Statement

ANDERLEX HOLDINGS LLC
885 WOODSTOCK RD
ROSWELL GA 30075-2277

YOUR FINANCIAL ADVISOR:
ML DIRECT
FA # 1001
(877) 653-4732

For Client Service Questions Call:
1-800-MERRILL (1-800-637-7455)

Office Serving Your Account:
P O BOX
PENNINGTON NJ 08534-4125

Account Value as of December 31, 2016
$705,159.62

### Asset Allocation Summary



Equ t es
100%

* May not reflect all holdings

### Total Value Comparison ( in $ Thousands )



860 50  875 89  955 88
830 57
604 13
486 68
705 16

1/16 2/16 3/16 4/16 5/16 6/16 7/16 8/16 9/16 10/16 11/16 12/16

### Realized Capital Gain and Loss Summary*

| | Current Fiscal Year (12/16) | Prior Fiscal Year (12/15) |
|---|---|---|
| Short Term | 147,045.80 | 0.00 |
| Long Term | 0.00 | 0.00 |

* - Excludes transactions for which we have insufficient data

### Unrealized Capital Gain and Loss Summary*

| | Current Fiscal Year (12/16) | Prior Fiscal Year (12/15) |
|---|---|---|
| Short Term | ( 480,866.95) | 0.00 |
| Long Term | 0.00 | 0.00 |

* - Excludes transactions for which we have insufficient data

EXHIBIT

E

## When you have time to think about this……

From:   Darlene Geller-Stoff (dgellerstoff@mindspring.com)

To:       ilsignoredax@yahoo.com

Date:   Monday, July 31, 2017, 10:56 AM EDT

1. GPN:              I would like to pay Mike and James by the end of this week.  Should I pay them out of Anderlex or would you prefer to pay them from another account?

                              I have an invoice for $500 from James and I will have Mike's invoice today. I have Mike adding the logo the web ite  It  hould be updated by tomorrow

                              Since GPN i  kind of on hold now, we  hould probably  it tight on hi  recommendation , unless you think there is some overall value in investing a little more time and money in the GPN website.

                              Just let me know.


2. Anderlex:        Please move $76,076.40 from ML to the Anderlex operating account sometime this week so I can make that transfer back to my account.


3. SunTrust:        I will establish the online trading account at SunTrust this week and you'll need to let me know when you want to do the stock transfer  I will only keep your stock in that account

                              In the meantime, I will complete the paperwork to move my stocks back into my portfolio. I won't execute on anything regarding any stocks until you confirm you're ready to do so.

EXHIBIT

F

Transaction ID
STIS02202261 25

Clearing through National Financial Services
LLC ("NFS"): Clearing # 0226

# Transfer of Assets

## 1. Receiving Account Information

Account Number

Account Owner/Trust/Entity Name

DARLENE GELLER STOFF

Social Security Number/Taxpayer ID Number

Additional Account Owner/Trust/Entity Name

Social Security Number/Taxpayer ID Number

**Receiving Account Type**  *Check one.*

**Nonretirement Accounts**
- [x] Individual
- [ ] Joint
- [ ] Trust
- [ ] Corp/Business
- [ ] UGMA / UTMA
- [ ] Estate
- [ ] Other_____

**Retirement Accounts**
- [ ] Traditional, SEP, or Rollover IRA
- [ ] Roth IRA
- [ ] SIMPLE IRA
- [ ] IRA BDA
- [ ] Roth IRA BDA
- [ ] Qualified Plan*

## 2. Account Being Transferred

Account Number          DTC Number
26X-55N24

Account Owner/Trust/Entity Name(s)

ANDERLEX HOLDINGS LLC

Delivering Firm Name

MERRILL LYNCH

Address          City

State      Zip Code      Delivering Firm Phone

**Delivering Account Type**  *Check one.*

**Nonretirement Accounts**
- [ ] Individual
- [ ] Joint
- [ ] Trust
- [x] Corp/Business
- [ ] UGMA / UTMA
- [ ] Estate
- [ ] Other_____

**Retirement Accounts**
- [ ] Traditional, SEP, or Rollover IRA
- [ ] Roth IRA
- [ ] SIMPLE IRA
- [ ] IRA BDA
- [ ] Roth IRA BDA
- [ ] Qualified Plan*

* Qualified Plan options offered under the Premiere Select Retirement Plan include Profit Sharing and Money Purchase plans.

## 3. Transfer Instructions  *Complete A, B, C, D, or E.*

If you do not instruct us otherwise, we will default to transfer in kind all eligible positions in the account. Money market mutual funds may be liquidated. **National Financial Services LLC is NOT responsible for market fluctuation on requests with written liquidation instructions.** Complete a separate Additional Assets Schedule if you need to list more securities.

- [ ] All or some of the assets are Alternative Investments and a completed Alternative Investment Addendum and Custody Agreement is on file.
Note: Some alternative investments may be restricted to certain account registrations.

### A. Brokerage or Trust Company Transfer

Brokerage account transfers are in kind; liquidate assets at current firm prior to submitting this form if you wish to have assets transferred in cash. For Annuities, complete Section 3.D.

- [ ] 1. Transfer the entire account.  *Skip to Section 4.*
- [x] 2. Transfer only part of my account In Kind, as detailed below:

| Security Name or Symbol | # of Shares or "All" |
|---|---|
| VRX | ALL |
| BAC | ALL |
| | |

### B. Mutual Fund Company Transfer

| Fund Name/Symbol and Account Number | # of Shares or "All" |
|---|---|
| | |

- [ ] In Kind    [ ] Liquidate

| Fund Name/Symbol and Account Number | # of Shares or "All" |
|---|---|
| | |

- [ ] In Kind    [ ] Liquidate

| Fund Name/Symbol and Account Number | # of Shares or "All" |
|---|---|
| | |

- [ ] In Kind    [ ] Liquidate

### C. Bank or Credit Union Transfer  *Do NOT use this form to transfer a nonretirement bank checking account.*

- [ ] 1. Transfer cash only.  *All cash will be transferred unless you indicate a different amount to transfer here:*

Cash Transfer Amount
$

- [ ] 2. Liquidate CD immediately and send cash.
*You may be charged a penalty for early withdrawal.*
- [ ] 3. Liquidate CD at maturity and send cash.

CD Maturity Date MM DD YYYY      *The request must be submitted at least 21 days before maturity, and no more than 60 days before maturity.*

## 3. Transfer Instructions *continued*

### D. Annuity Transfer

**All annuities must be surrendered (cashed in), which could mean tax implications, penalties, fees, and loss of product features.**

☐ 1. Full Annuity Surrender *Transfer the entire amount in cash immediately.*

☐ 2. Penalty-Free Surrender *Transfer ONLY the penalty-free portion. If the penalty-free portion is the full balance, transfer the full balance.*

☐ 3. Partial Annuity Surrender *Transfer the following cash amount:*

Cash Amount
$

### E. Transfer Agent Transfer

Security Symbol or Name

☐ 1. Transfer all whole shares and sell fractions.

☐ 2. Transfer all whole shares only.

☐ 3. Transfer all whole shares, sell fractions, and close account.

☐ 4. Partial transfer of the following number of eligible whole shares:

Number of Shares

## 4. Signatures and Dates *All owners of both accounts must sign this form.*

By signing below you instruct NFS and the Delivering Firm to act on all instructions given on this form and you acknowledge and agree that:

- The delivering firm ("Delivering Firm") will transfer the assets in your account in accordance with your transfer instructions above, and to National Financial Services LLC ("NFS") and, if to a Premiere Select IRA or Premiere Select Retirement Plan account, to Fidelity Management Trust Company ("FMTC") as successor Custodian/Trustee.
- Affirm that you are aware of any tax or financial implications that may arise in connection with this transfer or with the sale or liquidation of any assets prior to transfer, including penalties, fees, financial losses, or losses of product features or benefits.
- Any assets not readily transferable might not be transferred within the time frames set by FINRA or other applicable authorities.
- You authorize the Delivering Firm to sell any non-transferable money fund shares, and any shares of other mutual funds that you have requested be sold, and transfer the proceeds as cash.

- You Authorize the Delivering Firm to contact you about any assets that cannot be transferred.
- You authorize the Delivering Firm to deduct from your account any fees that you owe, and, if necessary, to sell assets in your account to pay those fees.
- You instruct the Delivering Firm to transfer any physical certificates in good deliverable form, including any necessary tax waivers.
- You authorize the Delivering Firm to cancel any open orders on your account when it receives this form.
- You have destroyed or returned any credit/debit cards and unused checks associated with your account at the Delivering Firm, if closing that account.

*Retirement Accounts*
- If you are 70½ or older, this transfer will not violate IRS rules on required minimum distributions.

- If you are transferring a Roth IRA, it is your responsibility to track the Five-Year Aging Date.
- If you are requesting to transfer a traditional IRA or rollover IRA that may differ from the receiving IRA you maintain at NFS, you hereby authorize NFS to combine your IRA assets and you acknowledge this could limit your options for reinvesting your rollover IRA assets in an employer-sponsored plan in the future.
- If you are transferring to a Beneficiary Distribution Account ("BDA"), you accept full responsibility for complying with all inherited IRA transfer requirements.
- If you are transferring a SIMPLE IRA, you accept that the Date of First Participation will be the date that contributions are first deposited to your Premiere Select SIMPLE IRA by your employer, unless you provide a Date of First Participation.

**If you are transferring an account with different ownership or registration than your NFS Account, all owners of both accounts must sign below.**

Print Account Owner Name *First, M.I., Last*
DARLENE GELLER STOFF

Account Owner Signature | Date *MM - DD - YYYY*
SIGN   *Darlene Geller Stoff*   8-14-17

MEDALLION SIGNATURE GUARANTEE

Print Account Owner Name *First, M.I., Last*
DARLENE GELLER STOFF

Account Owner Signature | Date *MM - DD - YYYY*
SIGN   *Darlene Geller-Stoff*   8-14-17

MEDALLION SIGNATURE GUARANTEE

Print Account Owner Name *First, M.I., Last*
Pierce Kirby

Account Owner Signature | Date *MM - DD - YYYY*
SIGN

MEDALLION SIGNATURE GUARANTEE

For Custodian/Trustee Use Only: Letter of Acceptance
☐ Fidelity Management Trust Company (FMTC)   **or**   ☐   Specify

accepts appointment as successor custodian/trustee for the retirement account referenced herein. Transfer the account as instructed on this form, on a trustee-to-trustee basis, to the appropriate successor custodian/trustee, c/o National Financial Services LLC (NFS). NFS is an agent for FMTC.

Successor/Custodian/Trustee's Representative | Signature | Date *MM - DD - YYYY*

**Provide all pages of the signed Transfer of Assets form and all pages of your most recent statement to your Broker/Dealer.**
*National Financial Services LLC, Member NYSE, SIPC*              1.747272.111 - 414980.9.0 (09/15)



EXHIBIT

G

Transaction ID
STS0220223797

Clearing through National Financial Services
LLC ("NFS"): Clearing # 0226

# Transfer of Assets

## 1. Receiving Account Information

| Account Number |
|---|
| ██████████ |

| Account Owner/Trust/Entity Name |
|---|
| DARLENE GELLER-STOFF |

| Social Security Number/Taxpayer ID Number |
|---|
| ██████████ |

| Additional Account Owner/Trust/Entity Name |
|---|

| Social Security Number/Taxpayer ID Number |
|---|

**Receiving Account Type**   *Check one.*

**Nonretirement Accounts**
- ☑ Individual
- ☐ Joint
- ☐ Trust
- ☐ Corp/Business
- ☐ UGMA / UTMA
- ☐ Estate
- ☐ Other_____

**Retirement Accounts**
- ☐ Traditional, SEP, or Rollover IRA
- ☐ Roth IRA
- ☐ SIMPLE IRA
- ☐ IRA BDA
- ☐ Roth IRA BDA
- ☐ Qualified Plan*

## 2. Account Being Transferred

| Account Number | DTC Number |
|---|---|
| 26X 55N24 | |

| Account Owner/Trust/Entity Name(s) |
|---|
| ANDERLEX HOLDINGS LLC |

| Delivering Firm Name |
|---|
| MERRILL LYNCH |

| Address | City |
|---|---|

| State | Zip Code | Delivering Firm Phone |
|---|---|---|

**Delivering Account Type**   *Check one.*

**Nonretirement Accounts**
- ☐ Individual
- ☐ Joint
- ☐ Trust
- ☑ Corp/Business
- ☐ UGMA / UTMA
- ☐ Estate
- ☐ Other_____

**Retirement Accounts**
- ☐ Traditional, SEP, or Rollover IRA
- ☐ Roth IRA
- ☐ SIMPLE IRA
- ☐ IRA BDA
- ☐ Roth IRA BDA
- ☐ Qualified Plan*

\* Qualified Plan options offered under the Premiere Select Retirement Plan include Profit Sharing and Money Purchase plans.

# 3. Transfer Instructions  *Complete A, B, C, or E.*

If you do not instruct us otherwise, we will default to transfer in kind all eligible positions in the account. Money market mutual funds may be liquidated. **National Financial Services LLC is NOT responsible for market fluctuation on requests with written liquidation instructions.** Complete a separate Additional Assets Schedule if you need to list more securities.

☐ All or some of the assets are Alternative Investments and a completed Alternative Investment Addendum and Custody Agreement is on file.
Note: Some alternative investments may be restricted to certain account registrations.

## A. Brokerage or Trust Company Transfer

**Brokerage account transfers are in kind; liquidate assets at current firm prior to submitting this form if you wish to have assets transferred in cash.** For Annuities, complete Section 3.D.

☐ 1. Transfer the entire account.  *Skip to Section 4.*

☑ 2. Transfer only part of my account In Kind, as detailed below:

| Security Name or Symbol | # of Shares or "All" |
|---|---|
| AMZN | ALL |
| GE | ALL |
| STX | ALL |

## B. Mutual Fund Company Transfer

| Fund Name/Symbol and Account Number | # of Shares or "All" |
|---|---|
| | |

☐ In Kind   ☐ Liquidate

| Fund Name/Symbol and Account Number | # of Shares or "All" |
|---|---|
| | |

☐ In Kind   ☐ Liquidate

| Fund Name/Symbol and Account Number | # of Shares or "All" |
|---|---|
| | |

☐ In Kind   ☐ Liquidate

## C. Bank or Credit Union Transfer  *Do NOT use this form to transfer a nonretirement bank checking account.*

☐ 1. Transfer cash only.  *All cash will be transferred unless you indicate a different amount to transfer here:*

| Cash Transfer Amount |
|---|
| $ |

☐ 2. Liquidate CD immediately and send cash.
*You may be charged a penalty for early withdrawal.*

☐ 3. Liquidate CD at maturity and send cash.

| CD Maturity Date  *MM DD YYYY* |
|---|
| |

*The request must be submitted at least 21 days before maturity, and no more than 60 days before maturity.*

## 3. Transfer Instructions *continued*

### D. Annuity Transfer

**All annuities must be surrendered (cashed in), which could mean tax implications, penalties, fees, and loss of product features.**

- [ ] 1. Full Annuity Surrender  *Transfer the entire amount in cash immediately.*
- [ ] 2. Penalty-Free Surrender  *Transfer ONLY the penalty-free portion. If the penalty-free portion is the full balance, transfer the full balance.*
- [ ] 3. Partial Annuity Surrender  *Transfer the following cash amount:*

  | Cash Amount |
  | --- |
  | $ |

### E. Transfer Agent Transfer

| Security Symbol or Name |
| --- |
| |

- [ ] 1. Transfer all whole shares and sell fractions.
- [ ] 2. Transfer all whole shares only.
- [ ] 3. Transfer all whole shares, sell fractions, and close account.
- [ ] 4. Partial transfer of the following number of eligible whole shares:

  | Number of Shares |
  | --- |
  | |

## 4. Signatures and Dates  *All owners of both accounts must sign this form.*

By signing below you instruct NFS and the Delivering Firm to act on all instructions given on this form and you acknowledge and agree that:

- The delivering firm ("Delivering Firm") will transfer the assets in your account in accordance with your transfer instructions above, to National Financial Services LLC ("NFS") and, if to a Premiere Select IRA or Premiere Select Retirement Plan account, to Fidelity Management Trust Company ("FMTC") as successor Custodian/Trustee.
- Affirm that you are aware of any tax or financial implications that may arise in connection with this transfer or with the sale or liquidation of any assets prior to transfer, including penalties, fees, financial losses, or losses of product features or benefits.
- Any assets not readily transferable might not be transferred within the time frames set by FINRA or other applicable authorities.
- You authorize the Delivering Firm to sell any non-transferable money market fund shares, and any shares of other mutual funds that you have requested be sold, and transfer the proceeds as cash.

- You Authorize the Delivering Firm to contact you about any assets that cannot be transferred.
- You authorize the Delivering Firm to deduct from your account any fees that you owe, and, if necessary, to sell assets in your account to pay those fees.
- You instruct the Delivering Firm to transfer any physical certificates in good deliverable form, including any necessary tax waivers.
- You authorize the Delivering Firm to cancel any open orders on your account when it receives this form.
- You have destroyed or returned any credit/debit cards and unused checks associated with your account at the Delivering Firm, if closing that account.

  *Retirement Accounts*
- If you are 70½ or older, this transfer will not violate IRS rules on required minimum distributions.

- If you are transferring a Roth IRA, it is your responsibility to track the Five-Year Aging Date.
- If you are requesting to transfer a traditional IRA or rollover IRA that may differ from the receiving IRA you maintain at NFS, you hereby authorize NFS to combine your IRA assets and you acknowledge this could limit your options for reinvesting your rollover IRA assets in an employer-sponsored plan in the future.
- If you are transferring to a Beneficiary Distribution Account ("BDA"), you accept full responsibility for complying with all inherited IRA transfer requirements.
- If you are transferring a SIMPLE IRA, you accept that the Date of First Participation will be the date that contributions are first deposited to your Premiere Select SIMPLE IRA by your employer, unless you provide a Date of First Participation.

**If you are transferring an account with different ownership or registration than your NFS Account, all owners of both accounts must sign below.**

| Print Account Owner Name  *First, M.I., Last* | MEDALLION SIGNATURE GUARANTEE |
| --- | --- |
| DARLENE GELLER STOFF | |
| **SIGN** Account Owner Signature *Tarlene J Geller Stoff*  Date *MM-DD-YYYY*  8-14-17 | |

| Print Account Owner Name  *First, M.I., Last* | MEDALLION SIGNATURE GUARANTEE |
| --- | --- |
| DARLENE GELLER STOFF | |
| **SIGN** Account Owner Signature *Darlene Geller-Stoff*  Date *MM-DD-YYYY*  8-14-17 | |

| Print Account Owner Name  *First, M.I., Last*  *Pierce Kirby* | MEDALLION SIGNATURE GUARANTEE |
| --- | --- |
| **SIGN** Account Owner Signature  Date *MM-DD-YYYY* | |

| For Custodian/Trustee Use Only: Letter of Acceptance | Specify |
| --- | --- |
| [ ] Fidelity Management Trust Company (FMTC)  or  [ ] | |

accepts appointment as successor custodian/trustee for the retirement account referenced herein. Transfer the account as instructed on this form, on a trustee-to-trustee basis, to the appropriate successor custodian/trustee, c/o National Financial Services LLC (NFS). NFS is an agent for FMTC.

| Successor/Custodian/Trustee's Representative | Signature | Date *MM-DD-YYYY* |
| --- | --- | --- |
| | | |

**Provide all pages of the signed Transfer of Assets form and all pages of your most recent statement to your Broker/Dealer.**

*National Financial Services LLC, Member NYSE, SIPC*   1.747272.111 - 414980.9.0 (09/15)

EXHIBIT

H



----- Forwarded Message -----
**From:** Darlene Geller-Stoff <dgellerstoff@mindspring.com>
**To:** Dax . . . <ilsignoredax@yahoo. com> <ilsignoredax@yahoo.com>
**Sent:** Tuesday, September 5, 2017, 02:06:25 PM EDT
**Subject:** Update

The ML transfer is complete. There was no margin call attached to the account and all the stock is intact.

There's $165,151 of assets coded as cash that is still being processed to SunTrust. I'll confirm that later today.

There will not be any margin call at SunTrust. Todd is working on the terms for our margin agreement.

I closed out the BoA accounts this morning. There was a balance of $290.71.

You'll need to let me know what steps to take to close out the LLC.

On a separate note. I paid Mike today for the website work for GPN.
I wrote the check from my business account - $3,815.78.


Sent from my iPhone

E
X
H
I
B
I
T

I

**Transaction Summary Document 2017 – 2020 Summary (updated 6/20/2020)**

## 2017

**<u>Anderlex Holdings</u>**

Oct 2017        LLC Taxes and Cancellation Fee        $ 550.00        reimbursed        12/5

**<u>DPP</u>**

March 2017     Investment                              $75,000.00      moved to Deep Purple

               (applied to DAX VRX margin)                             8/18

**<u>GPN</u>**

Sept 2017      Website                                $ 3,815.98      reimbursed        12/5

Sept 2017      Logo                                   $   500.00      reimbursed        12/5

**<u>OEI</u>**

Sept 2017      Investment                             $50,000.00      outstanding

**<u>Other</u>**

July 2017      ME Dividends applied to VRX Margin     $ 1,076.40      reimbursed        12/5

Sept 2017      Cash applied to VRX Margin             $ 4,094.76       reimbursed       12/5

Nov 2017       Property Tax (resolved)                $39,532.17      reimbursed        12/5

                                                      $   889.47      reimbursed        12/5

Dec 2017       Cash                                   $15,000.00      reimbursed        12/5

Dec 2017       Cash                                   $7,000.00       reimbursed        2/6

1

**2018**

| Jan 2018 | Gala LLC | $9,500.00 | reimbursed | 2/6 |
|----------|----------|-----------|------------|-----|
| Jan 2018 | Cash | $9,000.00 | reimbursed | 2/6 |
| Jan 2018 | Airfare | $1,016.20 | reimbursed | 2/6 |
| Jan 2018 | Hotel | $1,968.69 | reimbursed | 2/6 |
| | | | | |
| Feb 2018 | Global Imports | $20,400.00 | reimbursed | 2/6 |
| Feb 2018 | Cash | $6,000.00 | reimbursed | 4/13 |
| Feb 2018 | AMX ISI | $5,644.28 | reimbursed | 4/13 |
| Feb 2018 | Cash | $10,000.00 | | |
| | | $ 8,356.00 | reimbursed | 4/13 |
| | | $ 1,644.00 | reimbursed | 5/18 |
| | | | | |
| Mar 2018 | Nate Sanders | $7,000.00 | CXL | 3/9 |
| Mar 2018 | Nate Sanders Stopped Check Fee | $30.00 | reimbursed | 5/18 |
| Mar 2018 | Cash | $1,500.00 | reimbursed | 4/2 |
| Mar 2018 | Cash | $7,000.00 | reimbursed | 4/2 |
| Mar 2018 | Troutman Sanders | $100,000.00 | moved to Deep Purple 8/18 | |
| Mar 2018 | Wire Fee | $30.00 | reimbursed | 5/18 |
| Mar 2018 | Nate Sanders | $5,000.00 | reimbursed | 5/18 |
| Mar 2018 | Wire Fee | $30.00 | reimbursed | 5/18 |
| Mar 2018 | Appraisal | $500.00 | reimbursed | 6/11 |
| Mar 2018 | Credit Report | $25.81 | reimbursed | 6/11 |
| | | | | |
| Apr 2018 | Cash | $5,000.00 | reimbursed | 4/13 |
| Apr 2018 | Cash | $5,000.00 | reimbursed | 4/26 |
| | | | | |
| May 2018 | Cash | $4,000.00 | reimbursed | 5/8 |
| May 2018 | Cash | $7,000.00 | reimbursed | 5/15 |
| May 2018 | House | $167,230.35 | reimbursed | 5/18 |

| May 2018 | Wire Fee | $30.00 | reimbursed | 5/18 |
|---|---|---|---|---|
| May 2018 | Cash | $5,000.00 | reimbursed | 5/18 |
| May 2018 | Insurance | $1,006.75 | reimbursed | 5/18 |
| May 2018 | Check DDP | $25,000.00 | reimbursed | 6/4 |
| | | | | |
| June 2018 | Wire J. Weisman | $5,000.00 | reimbursed | 6/11 |
| June 2018 | Cash | $7,000.00 | reimbursed | 6/11 |
| June 2018 | Wire D. Weisman | $2,000.00 | reimbursed | 6/11 |
| June 2018 | Returned Check Fee | $ 35.00 | reimbursed | 6/11 |
| June 2018 | Wire Fee | $ 30.00 | reimbursed | 6/11 |
| June 2018 | Bank Fee | $ 30.00 | reimbursed | 6/11 |
| June 2018 | Wire Fee | $ 10.00 | reimbursed | 6/11 |
| June 2018 | Airfare London (3) | $5,505.93 | reimbursed | 6/11 |
| June 2018 | Mountain Laurel Expenses | $ 458.31 | reimbursed | 7/18 |
| | Mortgage | $2,453.54 | reimbursed | 6/11 |
| June 2018 | Check B. Ahern | $17,000.00 | reimbursed | 6/21 |
| June 2018 | Check B. Ahern | $ 5,000.00 | reimbursed | 6/27 |
| June 2018 | Cash B. Ahern | $ 500.00 | reimbursed | 6/27 |
| June 2018 | Business Meetings /Meals | $ 328.04 | reimbursed | 7/18 |
| | | | | |
| July 2018 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | |
| | Other | $ 669.45 | reimbursed | 7/27 |
| | | | | |
| July 2018 | Airfare Changes | $ 795.00 | reimbursed | 7/18 |
| July 2018 | London Hotel | $ 2,405.85 | reimbursed | 7/27 |
| July 2018 | London Other | $ 580.02 | reimbursed | 7/18 |
| | Rowley's $192.38 | | | |
| | Hawksmoor $343.65 | | | |
| | Red Lion $43.99 | | | |
| July 2018 | Deep Purple | $ 40,000.00 | reimbursed | 7/12 |
| July 2018 | Wire Fee | $ 30.00 | reimbursed | 7/18 |

| July 2018 | Gravier Center | $ 7,100.00 | reimbursed | 7/27 |
| July 2018 | Cash | $5,000.00 | reimbursed | 7/18 |
| July 2018 | Deep Purple | $300,000.00 | reimbursed | 7/31 |
| July 2018 | Wire Fee | $30.00 | reimbursed | 7/27 |
| July 2018 | Business Meetings/Meals | $73.77 | reimbursed | 7/27 |
| | | | | |
| Aug 2018 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 7/27 |
| | Other | $ 624.98 | reimbursed | 8/28 |
| Aug 2018 | Airfare RT ATL/LAX | $296.40 | reimbursed | 1/18 |
| Aug 2018 | Airfare OW LAX/ATL | $481.20 | reimbursed | 1/18 |
| Aug 2018 | Uber | $56.14 | reimbursed | 1/18 |
| | | $23.49 | reimbursed | 1/18 |
| Aug 2018 | Business Meetings and Meals | $110.51 | reimbursed | 1/18 |
| | | | | |
| Sept 2018 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 9/18 |
| | Other | $ 946.38 | reimbursed | 1/18 |
| Sept 2018 | Business Meetings and Meals | $51.94 | reimbursed | 1/18 |
| Sept 2018 | B. Ahern ($5,563.57) | $2,500.00 | reimbursed | 9/18 |
| | | $2,500.00 | reimbursed | 9/18 |
| | | $563.57 | reimbursed | 9/18 |
| Sept 2018 | Cash | $4,000.00 | reimbursed | 9/18 |
| Sept 2018 | Deep Purple | $200,000.00 | reimbursed | 9/27 |
| Sept 2018 | Wire Fee | $30.00 | reimbursed | 10/31 |
| Sept 2018 | Cash | $5,000.00 | reimbursed | 9/27 |
| Oct 2018 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 10/31 |
| | Other | $502.17 | reimbursed | 1/18 |
| Oct 2018 | Cash    10/1 | $2,500.00 | reimbursed | 10/31 |
| Oct 2018 | J. Weisman | $5,000.00 | reimbursed | 10/19 |
| Oct 2018 | Cash    10/19 | $2,500.00 | reimbursed | 10/19 |

4

| Oct 2018 | Wire Fee | $30.00 | reimbursed | 10/31 |
|---|---|---|---|---|
| Nov 2018 | Mountain Laurel Mortgage | $2453.54 | reimbursed | 10/31 |
| | Other | $399.13 | reimbursed | 1/18 |
| Nov 2018 | U of K | $5,000.00 | reimbursed | 10/31 |
| | Cash | $2,500.00 | reimbursed | 10/31 |
| Nov 2018 | J Weisman Zelle | $2,000.00 | reimbursed | 11/7 |
| | J Weisman Zelle | $500.00 | reimbursed | 11/7 |
| | DPP Wire | $7,500.00 | reimbursed | 11/7 |
| | Wire Fee | $30.00 | reimbursed | 12/5 |
| | DPP Wire & | $16,000.00 | outstanding | |
| | Payment Grace Schroeder/Slingr | | | |
| | Wire Fee | $30.00 | reimbursed | 12/5 |
| Nov 2018 | AnswerNet Set Up | $167.50 | reimbursed | 1/18 |
| Dec 2018 | Mountain Laurel Mortgage | $2453.54 | reimbursed | 3/4 |
| | Other | $488.61 | reimbursed | 2/2 |
| Dec 2018 | Go Daddy – Domain Names | $83.99 | reimbursed | 1/18 |
| | | | | |
| Dec 2018 | DDP Wire | $19,100.00 | reimbursed | 12/5 |
| | Wire Fee | $30.00 | reimbursed | 12/5 |
| | Cap One CC | $800.00 | reimbursed | 12/5 |
| Dec 2018 | DDP Wire | $5,000.00 | reimbursed | 12/14 |
| | Wire Fee | $30.00 | reimbursed | 1/18 |
| | PAM | $5,000.00 | reimbursed | 12/14 |
| | Wire Fee | $30.00 | reimbursed | 2/2 |

**2019**

| | | | | |
|---|---|---|---|---|
| Jan 2019 | DDP | $11,000.00 | reimbursed | 1/04 |
| | Wire Fee | $30.00 | reimbursed | 2/2 |
| | AnswerNet Monthly | $92.50 | reimbursed | 2/2 |
| | 2018 Property Tax | $7,854.68 | reimbursed | 2/2 |
| | | $1,483.15 | reimbursed | 2/2 |
| | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 3/4 |
| | ML Other | $531.78 | reimbursed | 6/13 |
| | Darryl Wheeler | $740.00 | reimbursed | 6/13 |
| | | | | |
| Feb 2019 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 4/2 |
| | ML Other | $595.84 | reimbursed | 6/13 |
| | AnswerNet Monthly | $92.50 | reimbursed | 3/4 |
| | DDP | $8,900.00 | reimbursed | 2/1 |
| | DW Credit Card | $1,100.00 | reimbursed | 2/1 |
| | Wire Fee | $30.00 | reimbursed | 2/2 |
| | Business Meals | $49.87 | reimbursed | 4/2 |
| | | $350.26 | reimbursed | 2/21 |
| | | $58.49 | reimbursed | 6/13 |
| | | $78.03 | reimbursed | 6/13 |
| | NW UK | $4,486.46 | reimbursed | 2/21 |
| | JW GSU | $1,404.75 | reimbursed | 2/21 |
| | Allegiant Airlines | $1,083.00 | reimbursed | 2/21 |
| | GoDaddy | $65.21 | reimbursed | 6/13 |
| | Kurt Hilbert Law | $10,000.00 | reimbursed | 2/27 |
| | Wire Fee | $10.00 | reimbursed | 4/2 |
| | Cash | $7,000.00 | reimbursed | 2/27 |
| | Cap One DW | $500.00 | reimbursed | 2/27 |
| | Cap One DW | $675.00 | reimbursed | 2/27 |

| Mar 2019 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 4/2 |
|---|---|---|---|---|
| | ML Other | $459.57 | reimbursed | 6/13 |
| | AnswerNet | $92.50 | reimbursed | 5/8 |
| | Cash    3/5 | $2,500.00 | reimbursed | 3/5 |
| | CapOne DW | $800.00 | reimbursed | 3/7 |
| | Cash JW | $1,500.00 | reimbursed | 3/8 |
| | CapOne DW | $200.00 | reimbursed | 3/11 |
| | Zelle DW | $1,500.00 | reimbursed | 3/15 |
| | CapOne DW | $1,000.00 | reimbursed $500  3/15 ($500) 6/13 | |
| | CapOne DW | $230.00 | reimbursed | 4/2 |
| | | | | |
| April 2019 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 5/8 |
| | ML Other | $388.58 | reimbursed | 6/13 |
| | AnswerNet | $92.50 | reimbursed | 6/13 |
| | DDP | $9,000.00 | reimbursed | 4/2 |
| | Wire Transfer | $30.00 | reimbursed | 4/2 |
| | CapOne DW | $1,025.00 | reimbursed | 4/2 |
| | CapOne DW | $270.00 | reimbursed | 4/2 |
| | NW UK | $4,500.00 | reimbursed | 4/2 |
| | CapOne DW | $1,200.00 | reimbursed | 4/10 |
| | DDP | $1,300.00 | reimbursed | 4/10 |
| | Wire Transfer Fee | $30.00 | reimbursed | 6/13 |

| | | | | |
|---|---|---|---|---|
| May 2019 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 5/8 |
| | ML Other | $1,508.81 | reimbursed | 6/7 |
| | AnswerNet | $92.50 | reimbursed | 6/13 |
| | | | | |
| | DDP | $7,000.00 | reimbursed | 5/1 |
| | Wire Transfer Fee | $30.00 | reimbursed | 6/13 |
| | CapOne DW | $950.00 | reimbursed | 5/1 |
| | CapOne DW | $50.00 | reimbursed | 5/1 |
| | DDP | $14,000.00 | reimbursed | 5/8 |
| | Wire Transfer Fee | $30.00 | reimbursed | 6/13 |
| | CapOne DW | $1,000.00 | reimbursed | 5/8 |
| | DDP | $31,000.00 | reimbursed | 5/17 |
| | Wire Transfer Fee | $10.00 | reimbursed | 6/13 |
| | Kurt Hilbert ` | $15,000.00 | reimbursed | 5/17 |
| | Wire Transfer Fee | $10.00 | reimbursed | 6/13 |
| | | | | |
| June 2019 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 6/7 |
| | ML Other | $754.77 | reimbursed | 10/21 |
| | | 207.59 | reimbursed | 6/13 |
| | | $547.18 | reimbursed | 6/30 |
| | AnswerNet | $92.50 | reimbursed | 6/13 |
| | GoDaddy | $4.99 | reimbursed | 6/7 |
| | CapOne DW | $1,000.00 | reimbursed | 6/7 |
| | Cash DW | $1,000.00 | reimbursed | 6/13 |
| | CapOneDW | $847.00 | reimbursed | 6/19 |
| | CapOne DW | $153.00 | reimbursed | 6/19 |
| | Cash DW | $1,500.00 | reimbursed | 6/19 |
| | | | | |
| July 2019 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 6/30 |
| | ML Other | $917.14 | reimbursed | 6/30 |

|  |  |  |  |  |
|---|---|---|---|---|
|  | AnswerNet | $92.50 | reimbursed | 6/30 |
|  | GoDaddy | $4.99 | reimbursed | 6/30 |
|  | DDP | $3,750.00 | reimbursed | 6/30 |
|  | Wire Fee | $30.00 | reimbursed | 6/30 |
|  | CapOne DW | $1,250.00 | reimbursed | 6/30 |
|  | KHilbert | $8,000.00 | reimbursed | 7/12 |
|  | Wire Fee | $30.00 | reimbursed | 6/30 |
|  | Dinner JCarlson | $153.06 | reimbursed | 8/22 |
|  | DOken | $2,500.00 | reimbursed $2k – 7/25 |  |
|  |  | $500 balance | reimbursed | 8/22 |
|  |  |  |  |  |
| August 2019 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 8/22 |
|  | ML Other | $695.64 | reimbursed | 8/22 |
|  | AnswerNet | $92.50 | reimbursed | 8/22 |
|  | GoDaddy | $4.99 | reimbursed | 8/22 |
|  | DDP | $7,000.00 | reimbursed | 8/1 |
|  | Wire Fee | $30.00 | reimbursed | 8/22 |
|  | CapOne DW | $1,000.00 | reimbursed | 8/1 |
|  | CapOneDW | $1,000.00 | reimbursed | 8/22 |
|  | Wire Fee | $30.00 | reimbursed | 8/22 |
|  | DDP | $4,000.00 | reimbursed | 8/22 |
|  | JW | $1,000.00 | reimbursed | 8/23 |
|  | NW | $800.00 | reimbursed | 8/23 |
|  | CapOne DW | $700.00 | reimbursed | 8/23 |
|  |  |  |  |  |
| Sept 2019 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 9/6 |
|  | ML Other | $786.45 | reimbursed | 9/11 $410 cash |
|  |  |  |  | 10/21 $376.45 |
|  | AnswerNet | $92.50 | reimbursed | 10/21 |
|  | CashDW | $4,000.00 | reimbursed | 9/6 |

|  | | | | |
|---|---|---|---|---|
|  | CapOne DW | $575.00 | reimbursed | 9/11 cash |
|  | CapOneDW | $75.00 | reimbursed | 9/11 $25 |
|  | | | | 10/21 $50 |
|  | DPP | $2,500.00 | reimbursed | 9/10 |
|  | DPP | $2,500.00 | reimbursed | 9/19 |
|  | Hilbert Law | $2,500.00 | reimbursed | 9/19 |
|  | CapOne DW | $1,250.00 | reimbursed | 9/19 |
|  | CapOneDW | $250.00 | reimbursed | 9/19 |
|  | Wire Fee | $10.00 | reimbursed | 10/21 |
|  | | | | |
| Oct 2019 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 10/21 |
|  | ML Other | $428.21 | reimbursed | 10/21 |
|  | DPP | $2,000.00 | reimbursed | 10/3 |
|  | Hilbert Law | $7,413.00 | outstanding | |
|  | CapOne DW | $1,250.00 | reimbursed | 10/21 |
|  | CapOne DW | $1,400.00 | reimbursed | 10/30 |
|  | CapOne DW | $100.00 | reimbursed | 10/30 |
|  | DPP | $3,000.00 | reimbursed | 10/30 |
|  | DPP | $2,000.00 | reimbursed | 10/30 |
|  | | | | |
|  | | | | |
| Nov 2019 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 11/6 |
|  | ML Other | $234.94 | reimbursed | 11/6 |
|  | D. Beck | $5,000.00 | reimbursed | 11/8 |
|  | DPP | $1,000.00 | reimbursed | 11/6 |
|  | DPP | $1,000.00 | reimbursed | 11/14 |
|  | CapOneDW | $1,000.00 | reimbursed | 11/14 |
|  | CapOneDW | $1,5000.00 | reimbursed | 11/21 |
|  | DPP Zelle | $500.00 | reimbursed | 11/21 |
|  | DPP Zelle | $500.00 | reimbursed | 11/27 |

| Dec 2019 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 12/2 |
|---|---|---|---|---|
| | ML Other | $425.85 | reimbursed | 12/2 |
| | ML Taxes Fulton County | $7908.57 | outstanding | |
| | ML Taxes Roswell | $1337.85 | outstanding | |
| | Crabapple Knoll | $335.63 | reimbursed | 12/31 |
| | Dog cash | $200.00 | reimbursed | 12/31 |
| | NWeisman Zelle | $760.00 | reimbursed 12/2 | |
| | JWeisman Zelle | $600.00 | reimbursed 12/2 | |
| | NWiesman Zelle | $100.00 | reimbursed 12/2 | |
| | DPP | $1640.00 | reimbursed 12/2 | |
| | DPP | $900.00 | reimbursed 12/2 | |
| | CapOneDW | $1900.00 | reimbursed 12/12 | |
| | CapOneDW | $1100.00 | reimbursed 12/12 | |
| | K. Hilbert | $3,000.00 | reimbursed 12/17 | |
| | D. Beck | $5000.00 | reimbursed 12/17 | |
| | DPP Zelle | $1500.00 | reimbursed 12/17 | |
| | DGS Juan | $500.00 | reimbursed 12/17 | |
| | CapOneDW | $1000.00 | reimbursed 12/20 | |
| | DPP | $1000.00 | reimbursed 12/20 | |

## 2020

| Jan 2020 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 1/2 |
|----------|--------------------------|-----------|------------|-----|
| | ML Other | $360.18 | reimbursed | 1/2 |

| Feb 2020 | Mountain Laurel Mortgage | $2,453.54 | reimbursed | 2/4 |
|----------|--------------------------|-----------|------------|-----|
| | ML Other | | | |
| | JWeisman | $1,600.00 | | |
| | DWheeler | $100.00 | reimbursed | 2/27 |

| Mar 2020 | Mountain Laurel Mortgage | $2,453.54 | | |
|----------|--------------------------|-----------|------------|------|
| | Reimbursed $1105 | $1,348.54 | | |
| | Reimbursed $1000 5/27 | $384.54 | reimbursed | 6/18 |
| | ML Other | $ 441.52 | | |
| | DPP | $1,000.00 | | |
| | Margin Call | $7,500.00 | | |

| Apr 2020 | Mountain Laurel Mortgage | $0 | |
|----------|--------------------------|----|--|
| | ML Other | $400.98 | |
| | Site Plan | $359.00 | reimbursed $200 cash |
| | Reimbursed $115.46 | $159.00 | 6/18 cash |
| | | $43.54 | |
| | DPP | $1,000.00 | |

| May 2020 | Mountain Laurel Mortgage | $0 |
|----------|--------------------------|-----|
| | ML Other | $286.66 |
| | Annual Insurance | $1,145.19 |

| June 2020 | Mountain Laurel Mortgage | $0 |
| | ML Other | $575.52 |

**2017 – 2018 – 2019 Account Deposit Summary**

| Year | Deposit | Disbursement | |
|------|---------|--------------|---|
| **2017** | | | |
| 12/5 | $65,500.00 | $65,458.78 | |
| | | | |
| **2018** | **$825,541.22** | **$825,525.23** | |
| 1/1 | $41.22 | | |
| 2/6 | $48,900.00 | $48,884.89 | |
| 4/13 | $20,000.00 | $ 20,000.28 | |
| 4/13 | $5,000.00 | $   5,000.00 | |
| 4/26 | $5,000.00 | $   5,000.00 | |
| 5/8 | $4,000.00 | $   4,000.00 | |
| 5/15 | $7,000.00 | $   7,000.00 | |
| 5/18 | $180,000.00 | $180,001.10 | |
| 6/4 | $25,000.00 | $ 25,000.00 | (DDP check) |
| 6/11 | $22,600.00 | $22,590.00 | |
| 6/21 | $25,000.00 | $17,000.00 | |
| 6/27 | | $ 5,500.00 | |
| 7/12 | $45,000.00 | $40,000.00 | (DP wire) |
| 7/18 | | $ 5,000.00 | (cash) |
| 7/18 | | $ 2,191.37 | |
| 7/27 | $13,000.00 | $12,732.61 | |
| 7/31 | $300,000.00 | $300,000.00 | (DP wire) |
| 8/9 | $50,000.00 cash | deposit BA | |
| 8/10 | $75,000.00 | $100,000.00 | (DP wire) |
| | | $ 25,000.00 | (Margin Suntrust) |
| 8/28 | | $      624.98 | |
| 9/18 | $12,000.00 | $4,000.00 | Cash |

14

|  |  | **$8,017.11 (-$17)** |  |
|---|---|---|---|
| **9/27** | **$205,000.00** |  |  |
|  |  | **$200,000.00** | **(DP Wire)** |
| **10/19** | **$7,500.00** | **$5,000.00** | **J Weisman** |
|  |  | **$2,500.00** | **Cash** |
| **11/1** | **$15,000.00** | **$5,000.00** | **UK Tuition (check)** |
|  |  | **$2,500.00** | **Cash zelle** |
|  |  | **$7,500 .00** | **miscl reimbursements** |
| **11/7** | **$10,000.00** | **$2,000.00** | **J Weisman** |
|  |  | **$500.00** | **J Weisman** |
|  |  | **$7,500.00** | **DP Wire** |
| **12/5** | **$20,000.00** | **$19,100.00** | **DDP Wire** |
|  |  | **$800.00** | **DW Cap One** |
| **12/14** | **$10,000.00** | **$5,000.00** | **DDP Wire** |
|  |  | **$5,000.00** | **PAM** |

**2019**

| **1/04** | **$11,000.00** | **$11,000.00** | **DDP** |
|---|---|---|---|
| **1/18** | **$3,159.00** | **$3,159.00** | **DGS Miscl** |
| **1/31** | **$20,000.00** | **$8,900.00** | **DDP** |
|  |  | **$1,100.00** | **DW Cap One** |
|  |  | **$10,000.00** | **DGS Miscl** |
| **2/7** | **$10,000.00** | **$9,000.00** | **cash** |
|  |  | **$1,000.00** | **DW Cap One** |

15

| | | | |
|---|---|---|---|
| **2/21** | **$8,000.00** | **$1,404.75** | **JW GSU** |
| | | **$4,486.46** | **NW UK** |
| | | **$1,083.00** | **Plane Tickets** |
| | | **$675.00** | **CapOne** |
| | | **$350.00** | **DGS Miscl** |
| **2/27** | **$20,000.00** | **$10,000.00** | **K Hilbert** |
| | | **$7,000.00** | **Cash** |
| | | **$500.00** | **Cap One DW** |
| | | **$2,500.00** | **Cash** |
| **3/4** | **$5,000.00** | **5,000.00** | **DGS House/miscl** |
| **3/7** | **$2,500.00** | **$800.00** | **CapOne DW** |
| | | **$1,500.00** | **Cash JW** |
| | | **$200.00** | **CapOne DW** |
| **3/15** | **$2,000.00** | **$1,500.00** | **Zelle DW** |
| | | **$1,000.00** | **CapOne DW** |
| **4/1** | **$20,000.00** | **$9,000.00** | **DDP** |
| | | **$1,025.00** | **CapOne DW** |
| | | **$270.00** | **CapOne DW** |
| | | **$230.00** | **CapOne DW** |
| | | **$5,000.00** | **DGS** |
| | | **$4,500.00** | **NW UK** |
| **4/10** | **$2,500.00** | **$1,200.00** | **CapOne DW** |
| | | **$1,300.00** | **DDP** |

| | | | |
|---|---|---|---|
| 5/1 | $8,000.00 | $7,000.00 | DDP |
| | | $950.00 | CapOne DW |
| | | $50.00 | CapOne DW |
| 5/8 | $20,000.00 | $5,000.00 | DGS $.42 |
| | | $14,000.00 | DDP |
| | | $1,000.00 | CapOne DW |
| 5/20 | $46,000.00 | $15,000.00 | Kurt Hilbert |
| | | $31,000.00 | DDP |
| 6/7 | $5,000.00 | $4,000.00 | DGS |
| | | $1,000.00 | CapOne DW |
| 6/13 | $5,000.00 | $4,000.00 | DGS |
| | | $1,000.00 | cash |
| 6/19 | $2,500.00 | $1,500.00 | cash |
| | | $1,000.00 | CapOne DW |
| 6/30 | $9,000.00 | $3,750.00 | DDP |
| | | $1,250.00 | CapOne DW |
| | | $4,000.00 | DGS |
| 7/12 | $8,000.00 | 8,000.00 | KHilbert |
| 7/25 | $2,000.00 | $2,000.00 | DOken (-$500) |

| Date | Amount | | |
|---|---|---|---|
| 8/1 | $8,000.00 | $1,000.00 | CapOneDW |
| | | $7,000.00 | DPP |
| 8/22 | $9,000.00 | $1,000.00 | CapOneDW |
| | | $4,000.00 | DGS |
| | | $4,000.00 | DW/DPP |
| 8/23 | $2,500.00 | $800.00 | NW |
| | | $1,000.00 | JW |
| | | $700.00 | CapOneDW |
| 9/6 | $6,500.00 | $4,000.00 | Cash |
| | | $2,453.54 | DGS Sept Mortgage |
| | | $46.46 | DGS Miscl |
| 9/10 | $2,500.00 | $2,500.00 | DW/DPP |
| 9/11 | $600.00 cash | $575.00 | CapOne DW |
| | | $25.00 | CapOne DW |
| 9/?? | $410.00 cash | $410.00 | DGS Sept EX |
| 9/19 | $6,500.00 | $2,500.00 | DPP |
| | | $1,250.00 | CapOneDW |
| | | $2,500.00 | Hilbert Law |
| | | $ 250.00 | CapOne DW |
| 10/3 | $2,500.00 Oken | $2,000.00 | DPP Zelle |
| | | $500.00 | DGS reimburse oken |

| | | | |
|---|---|---|---|
| 10/21 | $5,000.00 | $3750.0 | DGS Oct Mortgage 2453.54 |
| | | | $1,296.46DGS Miscl |
| | | $1,250.00 | CapOne DW |
| 10/30 | $6,500.00 | $1,400.00 | CapOneDW |
| | | $3,000.00 | Zelle DPP |
| | | $2,000.00 | Zelle DPP |
| | | $100.00 | CapOne DW |
| 11/6 | $15,000.00 | $4,000.00 | DGS house/miscl |
| | | $1,000.00 | DPP |
| | ($10,000.00 DGS $) | | |
| 11/8 | $5,000.00 | $5,000.00 | Zelle D. Beck |
| 11/14 | $2,000.00 | $1,000.00 | Zelle DPP |
| | | $1,000.00 | CapOne DW |
| 11/21 | $2,000.00 | $1,500.00 | CapOne DW |
| | | $500.00 | Zelle DPP |
| 11/27 | $1,000.00 | $500.00 | DPP |
| 12/2 | $7,000.00 | $3,000.00 | DGS House/miscl ($120.61) |
| | | $760.00 | NWeisman |
| | | $600.00 | JWeisman |
| | | $1,640.00 | ZelleDPP |
| | | $100.00 | NWeisman |
| | | $900.00 | ZelleDPP |

| | | | |
|---|---|---|---|
| 12/12 | $3,000.00 | $1,900.00 | Zelle DPP |
| | | $1,100.00 | CapOne DW |
| | | | |
| 12/17 | $10,000.00 | $5,000.00 | DBeck |
| | | $1,500.00 | ZelleDPP |
| | | $3,000.00 | Check KHilbert |
| | | $500.00 | R DGS Juan Truck |
| | | | |
| 12/20 | $2,000.00 | $1,000.00 | ZelleDPP |
| | | $1,000.00 | CapOneDW |

---

**2020**

| | | | |
|---|---|---|---|
| 1/2 | $5,000.00 | $800.00 | Zelle NW |
| | | $950.00 | CapOneDW |
| | | $3,000.00 | DGS House/miscl |
| | | $250.00 | CapOne DW |
| | | | |
| 2/4 | $10,000.00 | 2,000.00 | Zelle DPP |
| | | $3,000.00 | DGS House/miscl |
| | | $5,000.00 | DGS money |
| 4/15 | $200.00 cash | $200.00 | DGS (siteplan) |
| 5/27 | $1,000 cash | | DGS Exp (Mar mortgage) |
| 6/18 | $500 cash | $384.54 | DGS Exp (Mar mortgage) |
| | | $115.46 | DGS Exp (SitePlan) |

E
X
H
I
B
I
T

J



**From:** "dgellerstoff@mindspring.com" <dgellerstoff@mindspring.com>
**To:** 'dax ...' <ilsignoredax@yahoo.com>
**Sent:** Wednesday, July 29, 2020, 01:00:11 PM EDT
**Subject:** Mountain Laurel Expenses

.

**Item:   Mountain Laurel Property**                                             **07/29/2020**

Regarding the $5,000.00 check I received from you dated 7/24/20,

The funds were applied as follows to the outstanding expenses owed to me related to Mountain Laurel.

| July Payment | $5,000 | Credit | $386.04 applied to April 2020 House Ex |
|---|---|---|---|
| | | | $286.66 applied to May 2020 House Ex |
| | | | $1,145.95 applied to May 2020 House Insurance |
| | | | $575.52 applied to June 2020 House Ex |
| | | | $904.54 applied to July 2020 House Ex |
| | | | $1,337.87 applied to 2019 Roswell Taxes |
| | | | $363.42 applied to AMX/BOA Fees (Taxes) |

Since it was never our arrangement for me to use my personal funds to pay the mortgage, taxes or other expenses related to Mountain Laurel, please reimburse me for the remaining Mountain Laurel expenses I've incurred to date. This will bring outstanding expenses for Mountain Laurel to zero. Receiving this money will be most helpful to me.

| Balance Due | $8,345.13 | $7,908.57 2019 Fulton County Tax 12/19 |
|---|---|---|
| | | $436.56 AMX/BOA Interest and Fees |

Below is a schedule of upcoming expenses for Mountain Laurel for the remainder of 2020.

Please make these payments to me no later than the 15th of each month. Currently, I have very limited funds and little available credit to float any additional expenses. Of course, I will balance out monthly utilities/expenses to reflect actual charges as the bills come in as I always have.

| August | $7,357.06 | Fulton County Taxes 2020 (due 9/1/) |
|---|---|---|
| | $900.00 | Monthly Expenses |
| September | $500.00 est | Monthly Expenses |
| October | $2,453,54 | Mortgage |
| | $500.00 est | Monthly expenses |
| | $1,337.85 | Roswell Taxes 2020 (due 11/1) |
| November | $2,453.54 | Mortgage |
| | $500.00 est | Monthly Expenses |
| December | $2,453.54 | Mortgage |
| | $500.00 | Monthly Expenses |

EXHIBIT

K

Fulton County Magistrate Court
***E-FILED***ATW
Date: 2/11/2021 10:16 AM
Cathelene Robinson, Clerk
21ED176571

# MAGISTRATE COURT OF FULTON COUNTY

PROCEEDING AGAINST TENANT HOLDING OVER

Darlene Geller-Stoff
c/o Kelsey Grodzicki, Esq.
3490 Piedmont Rd, NE, Ste. 800, Atl. Ga, 30305
PLAINTIFF'S NAME, ADDRESS & PHONE NO.

VS.

David Weisman, Barbara Anne Klein, and All
Other Occupants at 11825 Mountain Laurel
Drive, Roswell, GA 30075
DEFENDANT'S NAME & ADDRESS (Include. PHONE NO.)

Kelsey Grodzicki, Esq. Ga Bar  134259
3490 Piedmont Road, NE, Ste 800
Atl., Ga, 30305   404-844-5670
PLAINTIFF'S ATTORNEY: NAME & PHONE

1. Defendant is in possession as Tenant of premises at the address in Fulton County as stated.
2. **Plaintiff/Affiant** is the (   ) Owner   ( X ) Attorney  (   ) Agent   (   ) Lessee of the owner of said Premises.
3. **Tenant**: (   ) Fails to pay the rent which is now past due.
   ( X ) Holds the premises over and beyond the term for which they were rented or leased to him.
   ( X ) other grounds:  Former tenants at will; 60 days notice given Nov. 16, 2020
4. Plaintiff desires and has demanded possession of the premises.
5. Defendant has failed and refused to deliver possession of the premises.

   **WHEREFORE, Plaintiff DEMANDS** (check and complete all that apply):
   (a) Possession of the premises.
   (b) Past due rent of $_____ for the month(s) of _____  _____
   (c) Rent accruing up to the date of judgment or vacancy at the rate of $_____ per _____
   (d) other:  possession of the premises

Sworn to and subscribed on _____ February 10 ____, 20 __21__

*Kelsey Grodzicki*
Signature of Affiant
Kelsey Grodzicki, Ga Bar 134259

Name of Affiant (Print or Type)
404-844-5673

Phone Number/ Email Address

Witness the Honorable Chief Judge of said Court: The above affidavit was sworn to and subscribed before the undersigned Deputy Clerk by affiant as provided by O.C.G.A.

Magistrate/Deputy Clerk/ Notary Public

*[Notary seal: GLORIA PARKER, NOTARY PUBLIC, DEKALB COUNTY, GEORGIA, MY COMMISSION EXPIRES JULY 01, 2024]*

TO THE CONSTABLE MARSHAL OF FULTON COUNTY or his lawful deputies to Sheriff of Fulton County of his lawful deputies.
**GREETINGS:** The Defendant must file either an oral or written Answer at room TG100, 185 Central Ave., S.W. Atlanta, Georgia 30303 between 8:30 A.M. and 5:00 P.M.  **OR**  electronically at http://www.odysseyefilega.com (convenience fee applies) within seven (7) days from the date of the actual service unless the seventh day is a Saturday, a Sunday, or a Court holiday, in which case the Answer may be made on the next day which is not a Saturday, a Sunday, or a Court holiday. If the Answer is oral, the substance thereof shall be endorsed on the dispossessory affidavit. The Answer may contain any legal or equitable defense or counterclaim. If no valid legal or factual Answer is filed, a writ of possession may be issued pursuant to O.C.G.A. § 44-7-53. **If no Answer is made, a writ of possession shall issue instanter.**
This _____ day of 2/11/2021 10:16 AM , 20_____

DEPUTY CLERK

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
**ENTRY OF SERVICE** (Marshall/Sheriff/Private)
I certify that I have served the foregoing Dispossessory Affidavit & summons **on the Defendant** by delivering a copy of same:
(   ) Personally
(   ) Defendant not found at/within Address on said Summons and Affidavit
(   ) Notoriously upon an individual residing at the premises (Name) _____. Deponent further states that
    the person served was of suitable age and discretion, and:- Race_____ Gender_____ Age_____ Weight_____ Height_____
( ✓ ) Tack and Mail: By posting a copy to the door of the premises  AND  depositing a copy in the U.S. Mail, First Class in an envelope
    properly addressed, said copy containing notice to the Defendant to Answer at the hour & place in said summons.

DATE OF SERVICE  March  13, 2021

DEFENDANT TO FILE ANSWER ON OR BEFORE  March 25 , 2021

PROCESS SERVER: - Print name:  N. Martnez , Officer's Radio/Badge Number  442

Signature: *N. Martnez*  (Must be **NOTARIZED** if served by Private Process Server)

Revised May 2018

E

X

H

I

B

I

T


L

Fulton County Magistrate Court
***E-FILED***SS
Date: 9/17/2021 4:56 PM
Cathelene Robinson, Clerk
21ED176571

**IN THE MAGISTRATE COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

Fulton County Magistrate Court
***E-FILED***JA
Date: 9/23/2021 12:41 P
Cathelene Robinson, Clerk
21ED176571

DARLENE GELLER-STOFF,

    Plaintiff,

      v.

DAVID WEISMAN, *et al.*,

    Defendants.

CIVIL ACTION FILE NUMBER:

21ED176571

## CONSENT ORDER

Darlene Geller-Stoff, David Weisman, and Arcturus International, LLC, consent and agree that Darlene Geller-Stoff will be granted possession of the Property at 11825 Mountain Laurel Drive, Roswell, Georgia ("the Property") on or before November 10, 2021. If David Weisman and Arcturus International, LLC have not vacated the Property by November 10, 2021, a writ of possession shall issue. The parties further agree that the counterclaims of David Weisman and Arcturus are dismissed without prejudice.

SO ORDERED this 23rd day of September, 2021.

_____
Fulton County Magistrate Judge

CONSENTED TO BY:

*/S/ KELSEY GRODZICKI*
KELSEY GRODZICKI
GA BAR NO. 123459
**WINTER CAPRIOLA ZENNER, LLC**
One Ameris Center
3490 Piedmont Road, NE, Suite 800
Atlanta, GA 30305
(404) 844 - 5673 (phone)
kgrodzicki@wczlaw.com
*Counsel for Plaintiff*

*/s/Bruce P. Brown*
BRUCE P. BROWN
GA BAR NO. 064460
**BRUCE P. BROWN LAW LLC**
1123 Zonolite Rd. NE
Suite 6
Atlanta, GA 30306
(404) 386 - 6856 (phone)
*Counsel for David Weisman*
*And Arcturus International, LLC*
(By Kelsey Grodzicki with express
Permission)